## MORRIS ACHTAR *v.* HERBERT POSNER
[No. 65, October Term, 1947.]

*Decided January 16, 1948.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Abram C. Joseph* for the appellant.

*H. Mortimer Kremer* and *E. Milton Altfeld,* with whom was *Jacob D. Hornstein* on the brief, for the appellee.

GRASON, J., delivered the opinion of the Court.

Michael J. Krastman and Harry Krastman owned, as tenants in common, two improved leasehold properties, known as 3577 and 3579 Park Heights Avenue, Balti-

more, Maryland. On February 14, 1946, they listed these properties for sale with the General Brokerage, Inc. The listing was in writing, and contained the following: "Remarks: Lease on Stores Expire: 3577 (1949)—3579 (1948)." On May 28, 1946, a contract in writing, duly signed by the parties, was entered into for the sale of these properties to James Marks and Morris Achtar for $18,500. On August 9, 1946, by agreement, 3577 Park Heights Avenue was conveyed to Achtar, and the other property to Marks. On December 20, 1943, Messrs. Krastman entered into a written lease of 3577 Park Heights Avenue to Herbert Posner for a term of three years, beginning on the 23rd day of December, 1943, and ending on the 22nd day of December, 1946. It contained an option of renewal for a further term of three years, provided "that at least thirty (30) days prior to the termination of this existing lease the Tenant shall give written notice to the Landlord of his desire to exercise this granted option for a renewal of said lease * * *."

When the original term under the lease expired, Achtar, then being the owner of the property, demanded possession of the premises, and, upon being refused, instituted in the Baltimore City Court an action in ejectment against Posner, the tenant. Issue being joined on the defendant's plea, the case was tried before the court, without a jury, and "judgment" was rendered "in favor of the defendant, for costs of suit." Plaintiff appealed.

Michael J. Krastman and Harry Krastman are brothers. They owned the property in question and rented it to Herbert Posner. Posner is a brother-in-law of Michael Krastman, and Harry Krastman has been working for him for years. The Krastmans rented this property to Posner in December, 1943, and he has been in possession of the same, under the lease referred to, ever since. He conducts a store at the premises, where he sells fruit and other commodities.

Shortly before the term under this lease expired, on December 22, 1946, Achtar, who then owned the premises, through Mr. Daniel C. Joseph, his attorney, gave Posner

written notice to quit. Not hearing from Posner, Joseph called him on the 'phone, and, according to Mr. Joseph, after some sharp talk, Posner told him he had renewed the lease and he was going to stay there until December, 1949. Posner denies he was rude to Mr. Joseph and said he told him he had renewed the lease.

Mr. Warren, the real estate broker, said that before the sale of the properties he took Achtar to see the same. Achtar inspected the property in question, saw that it was tenanted, and that a store was being operated on the premises. The testimony fails to show that Achtar inquired of the tenant or Warren as to the character of the tenancy. When this property was placed with the real estate brokers by the Krastmans for sale, they told them it was under lease that would not expire until 1949, and this clearly appears on the listing which was offered in evidence. Warren knew this, and it would seem quite extraordinary that he did not tell Achtar about it, or that Achtar did not ask if there was a lease on the property, and if so, its terms. This is especially significant in view of the fact that Achtar evidently wanted possession, and demanded possession of the premises as soon as the original term of the lease expired.

Mr. Daniel C. Joseph was present at the settlement, when the sale of the two properties from the Krastmans to Marks and Achtar was consummated. On cross-examination he testified:

"Q. You were his (Achtar's) lawyer? A. Yes, sir.

"Q. Did you ask them to show you the lease? A. Oh, yes, they gave it to us.

"Q. Did you read the option? A. Yes.

"Q. Did you know it had an option? A. Yes.

"Q. Did you ask Mr. Krastman if the tenant had availed himself of the option? A. I asked him nothing because I assumed he had not."

The only effect of the sale of this property upon Posner's lease of the same was that Achtar, in law, was substituted in the lease as landlord in place and stead of the Krastmans. If Posner's tenancy thereunder was ex-

tended until 1949 by the Krastmans before they sold the property to Achtar, the latter cannot get possession of the premises until 1949, if he knew, or if circumstances were such that the law charges him with the knowledge of Posner's tenancy. The lease provides that the original term may be extended for a further period of three years, upon Posner's giving the written notice to the landlord within the time provided therein. But a landlord can waive a written notice, and extend the lease upon verbal notice. The law does not require, even if a lease so provides, that the landlord must have written notice. A landlord and tenant may enter into any lawful agreement they desire. A landlord certainly can waive a written notice, and under the circumstances of this case, the extension of the lease by verbal notice, if such was a fact, is binding upon Achtar. The question would be one of proof. Does the testimony in this case reasonably warrant the conclusion that there was a waiver?

When the Krastmans directed the real estate brokers to put in the listing of the property that there was a lease on the same that did not expire until 1949, it was an admission by them that they had either waived a written notice, or that Posner had given them a written notice in accordance with the option contained in the lease. This listing was in writing, signed by each of the Krastmans, and its genuineness was not questioned in the evidence. We think this was evidence for two purposes: (1) that it tended to show that the Krastmans received written notice from Posner, in accordance with the terms of the lease, of his intention to exercise the option; or (2) that the Krastmans waived the notice.

Did Achtar have notice, before he purchased this property that the option had been exercised? When Achtar inspected this property, before the sale and saw it was tenanted, he should have inquired of Posner as to his holding. This he did not do. He knew at the time the sale was consummated that there was a lease on the property, for his lawyer read it, and noted the option it contained. Neither Achtar nor his lawyer inquired of Krast-

man if the option had been exercised. No inquiry, apparently, was made of Warren as to whether the option had been exercised. Under these circumstances the law will impute to Achtar knowledge of the power to exercise the option by Posner before he purchased the property.

The law in this State in regard to such matters was stated in the case of *Engler v. Garrett*, 100 Md. 387, 59 A. 648. That case was a proceeding to specifically enforce a contract for the sale of real estate. The property was tenanted and the defendant was under the impression he was entitled to have some security that his tenants would be allowed to remain, and without such security he refused to execute the deed. The court, at page 396 of 100 Md., at page 649 of 59 A., said:

"There was nothing in the contract to justify such a demand. The sale was made, as appears upon the face of the contract itself with reference to the lease, and the evidence also shows that the plaintiff was fully aware of the fact that Linthicum was in possession of the property as the tenant of the defendant. Under these circumstances, it cannot be contended that the plaintiff, if the property had been conveyed to him, could have disturbed the possession of the tenant. 'The fact of the possession of a party whose rights are involved in a purchase is a sufficient intimation of those rights to put the purchaser upon inquiry into their nature and, failing to make it, he is, in equity, visited with all the consequences of the knowledge of title.' *Baynard v. Norris*, 5 Gill, [468] 469, 46 Am. Dec. 647; *Pomeroy, Eq. Jur.*, sec. 615; note to *Alexander v. Ghiselin*, 5 Gil, 138."

In *Tiffany, Real Property*, 3rd edition, Vol. I, sec. 110, it is stated:

"The lessor's reversion, or estate in reversion, may be transferred by the lessor to another, and by the latter again transferred, and so again by the last transferee, and each transferee becomes the landlord for the time during which he holds title to the reversion. The ordinary mode in which such a transfer, with its consequent change of landlords, occurs, is by voluntary conveyance.

by the lessor, or by his transferee of his estate in the land. The conveyance need not refer in terms to the lease, a conveyance of the premises by the landlord being necessarily subject to the rights of the tenant, and consequently being of a reversionary interest only, provided the grantee, if a purchaser for value, has notice, actual or constructive, of the lease. Such notice the grantee may have from the tenant's possession of the premises * * *."

Counsel for Achtar objected to Posner giving in evidence a conversation he had with Michael Krastman in January, 1946. Posner said he told Krastman he intended to exercise his option and Krastman stated: "Well, I will know what to tell whoever I give it to sell the tenant can stay until 1949." He also objected to Posner stating that he had written Krastman a letter giving notice of his intention to exercise the option and that he saw Krastman the next day, when he stated to Posner "it's all okay, your lease is good until 1949."

We think this evidence was admissible.

Even if the testimony objected to is not considered, there was sufficient evidence remaining to afford a legal basis for the conclusion of the trial judge. The only witness called in the case by Achtar was his attorney, Mr. Joseph, who testified that he gave notice for his client to Posner to vacate the premises, that he was present when the sale by the Krastmans to Marks and Achtar was consummated, at which time he saw and apparently read the lease in question.

Counsel for Achtar complains that the testimony of Posner is not credible, and should not be believed, and stressed the relationship between Posner and the Krastmans. The fact that parties to a transaction are related does not warrant disbelief of their testimony. The relationship can be taken into consideration in weighing their evidence. In this case the evidence thus criticized has in no way been impeached, and the trial court had full opportunity to judge his credibility.

The case was tried under Rule 9 of this court, Rules of Practice and Procedure, part 3, subd. 3, and the trial

court was the judge of the law and the facts. We have often said that the trial judge will not be reversed unless it appears he was clearly wrong, and we cannot say that the learned judge below was wrong in this case. On the contrary, we think his conclusion was well within the bounds of reason.

*Judgment affirmed, with costs.*