BIO-RAMO DRUG COMPANY, INC.
*v.* ABRAMS ET UX.

[No. 21, September Term, 1962.]

496

*Decided October 18, 1962.*

The cause was argued before Brune, C. J., and Henderson, Hammond, Horney and Sybert, JJ.

*Ellwood A. Sinsky,* with whom was *Robert Whitman* of the New York Bar on the brief, for appellant.

*Julius Isaacson,* with whom was *Seymour Z. Isaacson* on the brief, for appellees.

Horney, J., delivered the opinion of the Court.

This is an action in equity for the specific performance of an option in a lease to purchase the leased premises. Demurrers to the bill, having been sustained without leave to amend, the

chancellor signed orders dismissing the bill of the plaintiff, Bio-Ramo Drug Company, Inc., (Bio-Ramo or tenant), against the defendants, Samuel T. Abrams (Abrams or landlord) and Johanna Abrams, his wife. Bio-Ramo has appealed.

While the basic question is whether the bill was demurrable, the questions on appeal relate to the adequacy of the allegations to state alternative causes of action, and in the main, concern whether there was (i) a waiver of written notice of intention to exercise the option; (ii) an effective exercise of the option to purchase; and (iii) an effectual renewal of the lease and option.

According to the bill, Abrams is the owner in fee of property in Baltimore City, known in its entirety as 325 West Baltimore Street and 322 West Redwood Street. On behalf of himself and as agent for his wife,[1] the landlord leased the premises to Bio-Ramo, for a term of five years, beginning on July 15, 1956, with a continuing option to purchase the property at any time before the expiration of the lease at a price of $50,000. It was further provided that written notice of an "election to purchase" the property should be given by registered mail, and that settlement therefor should take place within 120 days "after election to so purchase" had been given.

In May of 1961, the landlord and tenant orally agreed that a written supplemental lease would be prepared providing for a renewal of the tenancy for an additional period of five years at an increased rental as well as a renewal of the option to purchase (at any time during the extended period) for a price to be increased at the rate of $2,000 each year to a maximum of $60,000. But the agreement to renew was never prepared in writing and executed as had been contemplated by the parties.

On or about May 15, 1961, when the tenant informed the landlord that "if [it] could arrange within the time specified, [it] would exercise the option," the landlord replied that "it was not necessary to send the required written notice by registered mail, but that when the [tenant] was ready, [it should]

---

1. At the outset, and throughout the bill, it is alleged that in the dealings between the parties, the landlord "acted as the actual and implied agent of the wife."

contact him to make arrangements for the signing of the deed and settlement."

On or about June 15, 1961, and July 14, 1961, the tenant again orally informed the landlord that it was "going to exercise [its] option to purchase in accordance with the [lease], and further requested [execution of the supplemental lease] in the event, for any reason, [it] would be unable to produce the necessary amount of money, and, on both occasions, [the landlord] assured [the tenant] that the [supplemental lease] was being prepared and that the necessity for the written registered notice to exercise the purchase option was waived; and that all that was needed was to make an appointment to execute the * * * deed and [make] settlement."

The tenant, relying on the oral statements of the landlord, did not insist that it be given a copy of the supplemental lease prior to the termination of the original lease, nor did it give written notice of its intention to exercise the option. Instead, relying on the representations of the landlord, the tenant continued in possession of the leased premises and paid the increased rent in accordance with the oral agreement to renew the lease and option. But the tenant, in September of 1961, and "within one hundred twenty (120) days after the verbal notice given May 15, 1961, requested settlement with the [landlord] for the purchase" of the property. At that time the landlord "refused to execute the necessary papers and schedule a time for settlement, claiming there was no registered mail notice as required." Furthermore, the landlord refused to deliver a renewal of the lease and option, claiming the supplemental lease had not been agreed upon, but, on the contrary, insisted that the tenant (by holding over and paying the increased rent) had renewed the original lease under a clause therein that did not provide for a renewal of the option to purchase.

Bio-Ramo, besides seeking injunctive relief pending a hearing, sought specific performance to compel conveyance of the property upon payment of the purchase money, or, in the alternative, a written renewal of the lease and option on the terms orally agreed upon.

The separate demurrers of Abrams and his wife, assert that the tenant "did not give the notice of its election to purchase"

by registered mail as was required; that the tenant "never gave any definite, unconditional and binding notice of its intention to exercise its option to purchase"; that the so-called waiver was "not a waiver in fact or in law"; and that the "lease, being required by the statute of frauds to be in writing, any agreement modifying its provisions * * * cannot be proved by parol." In substance, the wife further claims that the bill was demurrable as to her because there was no allegation that she had knowledge that her husband was holding himself out as her agent, and because she had not done anything whereby she could be charged with ratification or estoppel.

We think the allegations of the bill are adequate to state a cause of action for the relief sought and that the demurrers should therefore have been overruled.

### (i) and (ii)

The questions as to whether there was a waiver of written notice of the intention to exercise the option to purchase and whether there was an effective exercise of the option will be considered together.

Since it is elementary that the demurrers had the effect of admitting the truth of the facts alleged in the bill of complaint, it is clear that the provisions of the lease requiring the tenant to communicate its "election to purchase" to the landlord by registered mail was orally waived. Not only did the landlord say (on May 15, 1961) that *"it was not necessary to send the required written notice by registered mail,"* but subsequently (on June 15 and again on July 14) he reiterated the fact that *"the necessity for the written registered notice to exercise the purchase option was waived."* Thus, the question to be decided on this point is not whether the landlord agreed to waive the requirement of written notice, but instead is whether an oral waiver is legally permissible under the circumstances in this case.

While a contract which is required by the statute of frauds to be in writing may not ordinarily be modified by a subsequent oral agreement, *Abrams v. Eckenrode,* 136 Md. 244, 110 Atl. 468 (1920), the law is well settled that an optionor may, by his words or conduct, waive strict compliance by the optionee

of the terms of the option as to a condition precedent, and it is immaterial that the option is a part of the instrument which is required to be in writing under the statute of frauds.

In *Achtar v. Posner,* 189 Md. 559, 56 A. 2d 797 (1948), involving an option to renew a three-year lease (made three days before the term began) for another period of three years, upon the giving of written notice within the time specified in the original lease, it was held that a landlord can waive the requirement of written notice from a tenant of his desire to exercise the option to renew the lease and extend the lease upon verbal notice. It is thus apparent that even though the lease in the instant case is within the statute of frauds, as was the lease in the *Achtar* case,[2] there can be an oral waiver of the condition precedent to the exercise of the option contained therein. As was said in the *Achtar* case (at p. 563), it is a matter of proof, that is, whether the testimony will "reasonably warrant the conclusion that there was a waiver."

Other authorities are in accord with the decision in the *Achtar* case. In 2 Corbin, *Contracts,* § 310, it is said:

> "If the plaintiff has failed to perform some condition precedent (express, implied, or constructive) to the defendant's duty under the written contract, and that failure was caused by the defendant himself, can the plaintiff get judgment on the written contract without performing the condition? The answer is clearly yes; and the cases generally support the answer * * *. This assumes that the non-performance of the condition was not caused by the plaintiff's own inability to perform, and that but for the defend-

---

2. The appellees undertake to distinguish *Achtar v. Posner,* 189 Md. 559, from the case at bar. The argument is that the lease in the *Achtar* case—since it did not extend beyond a period of three years—was not required to be in writing by the statute of frauds, but the argument is not sound. For while the statute excepts from the necessity of writing "all leases not exceeding the term of three years from the *making* thereof," the *Achtar* lease, as pointed out in this opinion, was *made* three days before the term began, and was therefore, as is the lease in this case, within the statute of frauds. See *Union Banking Co. v. Gittings,* 45 Md. 181.

ant's request, agreement, or other conduct, the plaintiff would have performed the condition. If the defendant later repudiates or otherwise breaks the contract, he cannot use the plaintiff's failure to perform on time as a defense.

\* \* \* \* \*

"The foregoing principles apply even where the plaintiff's non-performance of a condition was caused by an oral agreement substituting something else. This is true even though the oral agreement is itself within the statute and unenforceable, and even though it was the plaintiff and not the defendant who proposed the substitution. If the plaintiff would have performed the condition but for the oral agreement with the defendant, he can enforce the written contract."

The statement in 4 Williston, *Contracts* (3d ed.), § 595, and the Restatement, *Contracts,* § 224, are to the same effect.

We think the case must be heard on the merits to determine whether there had been such waiver. But even though there was a waiver of the requirement that the notice be in writing, the more difficult question is whether there was an effective exercise of the option. On the whole we think the bill so alleges.

Again, assuming the truth of the pleaded facts, it appears that the statement made by the tenant to the landlord (on May 15, 1961) that *"if [it] could arrange within the time specified [it] would exercise the option,"* was not such an *unconditional* offer to exercise the option as the law requires. See *Foard v. Snider,* 205 Md. 435, 109 A. 2d 101 (1954). But when (on June 15 and again on July 14) the tenant told the landlord that it was *"going to exercise [its] option to purchase in accordance with the [lease],"* and *"within one hundred twenty (120) days after the verbal notice on May 15, 1961, requested settlement with the [landlord] for the purchase"* of the property, we think the definite statement of intention made on the latter occasions, coupled with the demand for settlement, were a sufficient allegation in law of the fact that the option had been exercised, and we so hold.

Actual tender of the purchase price by the tenant was not required under the circumstances since it is apparent that a tender would have been futile. *Johnson v. Wheeler,* 174 Md. 531, 199 Atl. 502 (1938); *Buel v. Pumphrey,* 2 Md. 261 (1852).

Nor is there any merit to the claim that the bill is demurrable because the wife was without knowledge of the acts constituting waiver. That the husband was acting as her actual or implied agent is alleged in the bill and her demurrer admits the fact.

### (iii)

In assuming that the question as to whether there was an effective renewal of the lease and option is before us for review on appeal, though it appears the question was not specifically decided below, we deem it unnecessary to consider it at any length. But since the contention here is that part performance ought in equity to relieve the necessity of a writing where the refusal to enforce the oral contract would perpetrate a fraud, it would seem that the acts performed by the tenant are at least capable of two interpretations—either payment of increased rent under the new supplemental lease agreement or payment of increased rent under the renewal clause of the original lease. We further point out that what was said in *Semmes v. Worthington,* 38 Md. 298 (1873), at p. 326, as to acts which may be relied on as part performance, may have application to the instant case in the event the lower court should find it necessary to decide the issue posed by this alternative remedy at the trial of this case on its merits. See also *Rosenthal v. Freeburger,* 26 Md. 75 (1866); *Kaufmann v. Adalman,* 186 Md. 639, 47 A. 2d 755 (1946).

Since the case must be heard on its merits, it will be remanded for that purpose.

> *Orders of court sustaining demurrers without leave to amend reversed and case remanded for the entry of an order overruling demurrers and for a trial on the merits; the appellees to pay the costs.*