ODYSSEY GLASS CORPORATION *v.* ALFRED
SIMENAUR

[No. 672, September Term, 1980.]

*Decided February 6, 1981.*

The cause was argued before MORTON, MELVIN and COUCH, JJ.

*James K. Foley* for appellant.

*David R. Kuney,* with whom were *Gary I. Squire* and *Aronoff, David, Harvey, Hagner & Kuney* on the brief, for appellee.

COUCH, J., delivered the opinion of the Court.

On November 23, 1977, the appellant Odyssey Glass Corporation (Odyssey) and the appellee Alfred Simenaur entered into a five-year lease agreement (Lease), term commencing on January 15, 1978. The leased real property is located at 5218 Monroe Place, Hyattsville, Maryland and consists of .702 acres of land improved by an office/warehouse building.

Paragraph 25 of the Lease states:

"25. *OPTION TO PURCHASE.* The lessee shall have the exclusive option to purchase PARCEL "Q", of which the demised premises are a part, during the first eighteen months of this lease for a price of TWO HUNDRED SIXTY FIVE THOUSAND and 00/100 DOLLARS, ($265,000) All Cash, or during the period of July 15, 1979 to July 15, 1980 for a price of $278,250.00 All Cash."

Odyssey notified Mr. Simenaur, by letter dated July 12, 1979, that:

"Pursuant to paragraph 25 of the lease Odyssey Glass, Inc., leasee [sic] hereby exercises its option to purchase Parcel Q of which the above property is a part pursuant to the terms therein.

Please submit a formal contract at your earliest convenience, settlement to be held sixty (60) days from the date hereof.

If you have any questions, please contact our attorney, James K. Foley, at 589-5750.

Check in the amount of $2,500.00 (Two thousand five hundred dollars) enclosed as DEPOSIT for said purchase.

ODYSSEY GLASS, INC."

Mr. Simenaur's realty agent acknowledged receipt of Odyssey's letter and deposit on July 12, 1979. The appellee, however, advised Odyssey, by letter dated July 13, 1979, that the price of the subject property would be $278,250.00 unless full settlement occurred on or before July 15, 1979, in

which case the price would be $265,000.00. The deposit check was eventually returned to Odyssey.

Correspondence between the parties during subsequent weeks failed to remove the impasse concerning the purchase of the leased property. The appellant believed that the option to purchase had been properly exercised by notification. The appellee insisted upon payment of $265,000.00 on or before July 15, 1979, or payment of $278,250.00 on or before July 15, 1980.

On July 31, 1979, Odyssey filed a suit in equity seeking a declaratory judgment that it had properly exercised the option on July 15, 1979 entitling Odyssey to purchase the property for $265,000.00. Additionally, Odyssey sought a court order requiring the appellee to convey the property [1] and to pay damages to the appellant. On October 23, 1979, the appellant filed a motion for summary judgment on all issues but damages, alleging that it properly exercised the option to purchase. The appellee opposed appellant's motion and filed a cross-motion for summary judgment, contending that the lease provision required payment of the purchase price, and not mere notice of intent.

On December 3, 1979, the motion and cross-motion were argued in the Circuit Court for Prince George's County. The trial court denied appellant's motion for summary judgment, and granted appellee's cross-motion. Final judgment was entered on May 1, 1980, dismissing Odyssey's suit with prejudice.

On appeal Odyssey asks:

I. Did the trial court err in granting the appellee's cross-motion for summary judgment, and in dismissing the appellant's case with prejudice?

II. Did the trial court err in holding that the appellant had not properly exercised the option to purchase the real estate pursuant to the terms of

---

1. This request was apparently intended to be a prayer for specific performance.

the option, and in denying the appellant's motion
for summary judgment?

For the reasons set forth in this opinion we hold that the
trial court did not err in any of its rulings in the present case.

## I. Granting of the appellee's cross-motion

In its motion for summary judgment filed on October 23,
1979, the appellant stated "that there is no genuine dispute
between the parties as to any material fact." In support of its
motion Odyssey cited *Katz v. Pratt Street Realty,* 257 Md.
103, 120, 262 A.2d 540 (1970), for the proposition that
"where the language of the option is clear and unambiguous,
the true test of what is meant is not what a party to the
contract intended it to mean but what a reasonable person
in the position of the parties would have thought it to mean."

In its brief Odyssey renounces its previous positions
concerning the existence of a dispute as to material facts,
and concerning an ambiguity in the Lease. The appellant
now argues that the trial court erred in granting the
appellee's cross-motion and dismissing the appellant's case
without hearing evidence on the issue of when settlement
should have taken place for purchase of the subject property.
The appellant contends that the option provision of the
Lease is ambiguous because the provision fails to state that
settlement must have occurred on or before July 15, 1979 in
order for the appellant to purchase the property for
$265,000.00.

After our review of the pleadings and the hearing tran-
script we find that the appellant has not previously alleged
that the Lease's option provision is ambiguous. To the con-
trary, the appellant relied on the clear language of Para-
graph 25 in support of its own motion for summary
judgment. At the hearing on December 3, 1979, Odyssey
argued, albeit unsuccessfully, that the terms of the option
provision supported the interpretation that by notification
the option could be replaced by an executory bilateral
contract. The appellant did not attempt to introduce

testimony concerning the intent of the parties toward the Lease. In fact, the trial court sustained Odyssey's objection when counsel for the appellee tried to introduce an affidavit which related the parties' intentions.

Thus the clarity of the option provision was not specifically addressed by the trial court in its rulings or its written opinion. Nevertheless, the trial court, by its decision to interpret the provision, implicitly found the language to be unambiguous. *Bankers & Shippers Ins. v. Urie,* 38 Md. App. 232, 240, 380 A.2d 243 (1977), *cert. denied,* 282 Md. 729 (1978). When, as here, the terms of a lease are unambiguous, the trial court should state its interpretation of the lease through a declaratory judgment, or a directed verdict. *H & R Block, Inc. v. Garland,* 278 Md. 91, 359 A.2d 130 (1976). Because the trial court found no ambiguity in the Lease, there was no need for additional evidence as to the intent of the parties. Likewise there is no need for us to apply the various rules concerning extrinsic evidence that are suggested by the appellant. *Walker v. Associated Dry Goods Corp.,* 231 Md. 168, 189 A.2d 91 (1963).

Nothing in the record leads us to disagree with the trial court's action in granting appellee's cross-motion for summary judgment, and in dismissing the appellant's case with prejudice. *Washington Homes v. Interstate Land Development,* 281 Md. 712, 382 A.2d 555 (1978).

## II. Exercise of the Option to Purchase

Odyssey states in the second argument in its brief that the "language of the option is clear, there is no requirement that the exercise of the option by the plaintiff [Odyssey] required the tender of the purchase price prior to July 15, 1979; nor does it state that settlement must be had on or before July 15, 1979." The appellant then argues that in the absence of a specific option provision requiring settlement within a definite time, time is not of the essence in the contract formed by the exercise of the option, and the parties need only settle within a reasonable time.

Having heard the appellant's contention, the trial court found that Odyssey had not properly exercised its option to purchase the leased property. Thus no contract for the sale of the property was ever formed, and no contract was subject to specific performance. The trial court ruled that in order to be effective, an option must be performed strictly according to its written terms. *Straley v. Osborne,* 262 Md. 514, 278 A.2d 64 (1971). The trial court focused on the option's terms which granted Odyssey an "exclusive option to purchase" the subject property during a specified time period for a set amount "all cash". By these terms Odyssey's purchase of the property for $265,000.00 depended upon how soon Odyssey chose to exercise its option to purchase, and that proper exercise required tender of the set amount "all cash". It "seemed logical" to the trial court that the Lease restricted the time period that the property would be available for $265,000.00 in order to encourage the appellant to purchase the property. This purpose would be frustrated, according to the chancellor's opinion, if the appellant could obtain the discount price by notification of intent, and then delay the tender of the purchase price.

The appellant requests that we look beyond the terms of the Lease, and apply the "general" principle that notice of acceptance and a willingness to perform constitute proper exercise of an option. Supporting this proposition Odyssey cites *Straley, supra,* and *Foard v. Snider,* 205 Md. 435, 109 A.2d 101 (1954). By our reading of these Maryland cases, and by their application to the specific terms of Paragraph 25, we hold that the appellant did not properly exercise its option to purchase.

In *Straley, supra,* the Court of Appeals held that a lessee with a first option to purchase the leased property did not properly exercise the option by merely offering to purchase the property for less than its apparent value. The Court in *Straley, supra,* 262 Md. at 521, quoted its earlier definition of an option as:

"* * * a continuing offer to sell during the duration thereof which on being exercised by the optionee

becomes a binding and enforceable contract. * * * And when the optionee indicates an intention to exercise the option and *tenders the amount of the purchase price,* he has performed under the option and is entitled to specific performance. *Diggs v. Siomporas,* 248 Md. 677, 681, 237 A.2d 725, 727 (1968)." [Emphasis added.]

In *Foard, supra,* 205 Md. at 446, 447, the Court of Appeals discussed the proper exercise of an option, and that discussion supports both parties in the present case. In dicta Judge Hammond said:

"A question more difficult to answer, had the appellees relied on the point, would be whether Albert Foard did exercise the option within six months' period specified in it. Time is of the essence in a unilateral contract, such as an option, both in law and in equity, whether expressly declared to be so or not. *Williston on Contracts,* Rev. Ed., Sec. 853; *Pomeroy, Equity Jurisprudence,* 5th Ed., Vol. 4, Sec. 1408; *Maughlin v. Perry,* 35 Md. 352. Each such agreement must be scrutinized to see what it requires to be done within the specified time, either expressly or by necessary implication. Does it require completed performance, that is, actual payment, or does it require tender of the agreed price? Generally, there is contemplated only a notice of acceptance of, and a readiness and willingness to perform, the irrevocable offer which is an option. Whatever the option requires must be done. As in the case of all offers, revocable or irrevocable, the exercise must be unconditional and in exact accord with the terms of the option. For holdings that there must be a tender within the stated time, see *Williston,* work cited, Sec. 853, p. 2390; *Pomeroy,* work cited, Sec. 1407a (3), p. 1052; *Coleman v. Applegarth,* 68 Md. 21, 28. On the other hand, it has been held that: '* * * the option is a continuing offer to sell and, when duly accepted by

the optionee, becomes a definite contract mutually binding and enforceable. * * * When an optionee duly signifies his purpose to accept an option for the purchase of real estate, and tenders the amount of the purchase price *if required,* he is entitled to specific performance of the contract. The objection that the original agreement was lacking in mutuality is without merit, for when the optionee exercises an option the agreement becomes binding upon both parties.' (Emphasis supplied). *Trotter v. Lewis,* [185 Md. 528, 534, 45 A.2d 329 (1946)]."

The Court in *Foard,* however, expressly declined to decide whether a tender was essential or notice of acceptance would suffice to exercise the specific option to purchase in that case.

The Court of Appeals in *Diggs, supra,* affirmed a lower court's decision that the holders of a real property option were entitled to specific performance after they exercised the option within the required time by tendering the purchase price. The Court relied on its previous rulings that granted specific performance to optionees who signified their acceptance of options to purchase real property, and tendered the purchase price if required. *Trotter v. Lewis, supra,* which cited *Brewer v. Sowers,* 118 Md. 681, 86 A. 228 (1912).

A decree for specific performance was upheld by the Court of Appeals in *Brewer, supra,* because a landowner deliberately evaded the holder of an "option to buy" during the option period, while the holder attempted to tender in cash the required percentage of the purchase price. Chief Judge Boyd stated at 118 Md. at 688:

"In *Brantly on Contracts,* page 330, the rule is thus announced: 'When the option is given for the purchase of land, if the holder of it duly signifies his purpose to buy, *or tenders the price, if that be required,* he is entitled to specific performance of the contract, and it is no objection that the original agreement was lacking in mutuality or was not signed by the promisee. When he exercises the option, the agreement becomes binding upon both

parties, and either may demand specific performance or sue for damages for a breach of the contract.' " (Emphasis added).

Earlier Maryland authority concerning a tendering requirement appears in *Stansbury v. Fringer,* 11 G. & J. 149 (1840), in which the Court of Appeals affirmed a decree for specific performance based on a rental agreement permitting the lessee "to purchase said land any time within the said term of rent" for a fixed price. The Court found that the lessee properly tendered the full price and was therefore entitled to the bargain.

In *Coleman v. Applegarth,* 68 Md. 21, 11 A. 284 (1887), however, the Court of Appeals refused to grant specific performance for the sale of land. The appellant obtained an option which read:

> "For and in consideration of the sum of $5 paid me, I do hereby give to Charles Coleman the option of purchasing my lot of ground, . . . at and for the sum of $645 cash, at any time on or before the 1st of November, 1886." *Id.* at 26.

The Court ruled that this option was not properly exercised because Coleman failed to tender the price within the specified time. The Court in *Coleman* relied in part on *Maughlin v. Perry,* 35 Md. 352 (1872), in which a "covenant to sell" real property was ordered specifically performed despite the purchasers' nonpayment of the required purchase price. The Court found that the purchasers properly notified the landowner of their intent to purchase, only to learn that the land had been sold to a third party. Judge Stewart ruled that:

> "The circumstances referred to, after the execution of the contract, rendered such a step [i.e., specific performance] advisable, and certainly afford a sufficient excuse for the non-payment of the money, after they had accepted the terms proposed and tendered himself ready to pay in the manner indicated." *Id.* at 360.

More than a century later the decision in *Maughlin v. Perry* would still provide authority for the proposition that a tender is not necessary if it would be futile. *Nusbaum v. Saffell,* 271 Md. 31, 39, 313 A.2d 837 (1974).

The trial court found no Maryland cases interpreting a lease option provision substantially the same as Paragraph 25. The trial court relied on *Hurd v. Cormier,* 358 Mass. 736, 267 N.E.2d 116 (1971), in which the Massachusetts Supreme Judicial Court held that optionees in that case were required to tender the purchase price in order to exercise their option. Mere notification in writing did not entitle the optionees to specific performance. The *Hurd* decision, and the case of *Lau v. McKechnie,* 202 Mich. 284, 168 N.W. 438 (1918), also relied on by the trial court, are discussed in the extensive annotation concerning the necessity for payment in order to exercise an option found at 71 ALR3d 1201, *et seq.*[2] The Court of Appeals in *Bio-Ramo Drug Company, Inc. v. Abrams,* 229 Md. 494, 184 A.2d 831 (1962), reversed the chancellor's orders sustaining demurrers to a suit for specific performance of a lessee's option to purchase the leased property. The agreement in that case, however, did not include a time-price differential, and allowed settlement to occur up to 120 days "after election to so purchase" had been given. The Court found that the specific option could be properly exercised by a definite statement of intention coupled with a demand for settlement. Judge Horney added that:

> "Actual tender of the purchase price by the tenant was not required under the circumstances since it is apparent that a tender would have been futile."
> *Id.* at 502.

---

**2.** This annotation cites cases from Tennessee, Massachusetts, Michigan, Texas, and Wyoming as authority for the rule that when an option provides the right "to purchase" real property, the use of that phrase indicates that the option's exercise must be accomplished by payment of the purchase price, absent contradictory terms. 71 ALR 3d at 1252. The only contrary case cited is Pennsylvania Min. Co. v. Martin, 210 Pa. 53, 59 A. 436 (1904), in which the court determined that a tender requirement was not in harmony with other provisions of an option for "buying" coal.

See also Floyd v. Morgan, 4 S.E.2d 91 (Ga. App. 1939), and Graney v. United States, 258 F. Supp. 383 (S.D.W. Va. 1966), aff'd, 377 F.2d 992 (4th Cir. 1967), cert. denied, 389 U.S. 1022 (1967), in which payments were conditions precedent to the exercise of options.

More recently we decided in *Young v. Cities Service Oil Co.,* 33 Md. App. 315, 319, 364 A.2d 603 (1976), that an option to purchase leased property had been properly exercised by notice of intention and the tender of a deposit check in accordance with the particular procedure permitted under the option agreement.

The present case, of course, must be determined on the basis of its own specific circumstances and the interpretation of Paragraph 25. Nothing in the pleadings indicates that the appellant's tendering of the purchase price within the set time period would have been futile. To the contrary, the appellee's rapid response to the appellant's letter of intent indicates Mr. Simenaur's willingness to sell the property for the discount price, so long as the transaction could be completed on or before July 15, 1979. Nothing indicates that the chancellor erred in his interpretation of the option to purchase provision. We cannot say that he was wrong in finding that the proper exercise of the option to purchase required tender of payment during the option period.

*Judgment affirmed.*
*Costs to be paid by appellant.*