**Stacey O'BRIEN, et al.**

v.

**TOWN OF WESTERLY HOUSING AUTHORITY.**

**Civ. A. No. 84–0125 P.**

United States District Court,
D. Rhode Island.

Jan. 17, 1986.

**1066**

John W. Dineen, of R.I. Legal Services, Providence, R.I., for plaintiffs.

George Comolli, Westerly, R.I., for defendant.

### MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

The plaintiffs have moved for the award of attorney's fees and costs. The defendant Town of Westerly Housing Authority (WHA) sets forth the issues to be answered by objecting on the following grounds: "the plaintiff did not prevail under existing law", the "defendants' actions [were] not required by law,"[1] and an award of attorney's fees would be unjust.

For reasons hereinafter stated each of the defendant's objections are rejected.

The Court finds the plaintiff is entitled to a fee and the matter is set down for an evidentiary hearing on January 30, 1986 at 9:30 A.M. to determine the amount of the entitlement.

### 1. Background

The background of this case was all detailed in my Opinion and Order of January 16, 1985, wherein the plaintiff sought injunctive and declaratory relief and the defendant WHA moved to dismiss the action. In order to present a chronological sequence of events in this opinion, for ease of the reader, that opinion will be quoted at length here:

"The case came before the Court as a class action in which the plaintiffs alleged that the defendant, Westerly Housing Authority (WHA) was unlawfully promoting a policy of mid-term terminations of Section 8 Existing Housing leases in violation of tenants' rights to Due Process and their rights under the United States Housing Act, 42 U.S.C. § 1437f. The WHA moved this Court to dismiss the action for want of proper federal jurisdiction on the grounds that subsequent agreements between the parties had mooted the action."

. . . .

Beginning in July of 1982, the named plaintiff . . . Stacey O'Brien, leased a rental apartment on the second floor of 19 Beach Street, Westerly, Rhode Island, from Raymond and Gladys Ugone. Several months after she moved in, O'Brien became eligible for Section 8 Existing Housing certificates under the United States Housing Act, 42 U.S.C. § 1437f. The Section 8 program is administered in Westerly by the WHA. Under the program, the tenant pays 30% of his or her adjusted income toward rent and utilities, and the WHA pays the balance directly to the landlord using federal funds provided by the United States Department

---

**1.** As will be seen in the recitation of the background of this case, the controversy stems from the the discontinuance of Section 8 payments without notice or opportunity to contest the termination. The plaintiff claims this was a violation of due process. The defendant contends, "there is no law or decision which exists . . ." requiring such notice.

of Housing and Urban Development [HUD].

Pursuant to the program, O'Brien entered into a contract with the WHA and the Ugones whereby the parties agreed that the WHA would make subsidy payments to the Ugones during the term of O'Brien's lease. The contract incorporated a one year lease running from October 1, 1982, through September 30, 1983. Subsequently, the same parties entered into a 'Contract Renewal or Continuation' of the original contract, to run from October 1, 1983 through September 30, 1984. The renewal contract embodied the same terms as the original agreement, except that the rent was adjusted upward for the upcoming year.

On December 29, 1983, prior to the expiration of the renewal term, the Ugones conveyed the rental premises to Richard and Mildred Morrison, also defendants in that action. O'Brien alleged that on December 31, 1983, the Morrisons informed her by letter of their intention to terminate the rental agreement as of January 31, 1984. The letter purportedly stated that the WHA had informed the Morrisons that the conveyance of the property had rendered O'Brien's lease null and void, and relying on that information, they were instructing O'Brien to quit the premises.[2] The named plaintiff further alleges that WHA discontinued its Section 8 payments to the landlord after the December 1983 payment without giving her either notice or an opportunity to contest the termination.

Based on the foregoing events, O'Brien commenced the present action against the WHA on March 15, 1984. She claimed that in authorizing and participating in the mid-term termination of her Section 8 benefits, WHA violated her federally protected right to due process and her rights under 42 U.S.C. § 1437f. Accordingly, O'Brien sought injunctive and declaratory relief,

damages, costs, and reasonable attorney's fees. On May 11, 1984, the named plaintiff moved for class certification pursuant to Federal Rule of Civil Procedure 23(c)(1). The members of the proposed class were to consist of unnamed individuals who were presently or would be in the future, tenants participating in the WHA's Section 8 program. The motion was granted by this Court on May 29, 1984.

On May 15, 1984, O'Brien moved for a preliminary injunction requiring the WHA to notify the Morrisons that, contrary to their prior advisement, the lease remained valid notwithstanding the conveyance of the property, and that they could validly receive subsidy payments from the WHA if they would choose to accept them. The plaintiff requested that the WHA be further enjoined to reinstate O'Brien's one year lease and subsidy contract, and to refrain from any termination without affording the plaintiff prior written notice and a hearing. After the filing of this motion, the parties entered into negotiations to attempt to resolve the preliminary injunction issues. As a result, they formulated a stipulation which was filed and entered by this Court on June 19, 1984. The stipulation provided as follows:

1. Richard W. and Mildred M. Morrison (The Morrisons) have accepted assignment from Raymond Ugone of all rights to receive Section 8 Existing Housing Payments under plaintiff O'Brien's lease at 19 Beach Street, Westerly, Rhode Island.

2. The Westerly Housing Authority (WHA) agrees to resume payments on behalf of Stacey O'Brien, treating the Morrisons in all respects as having replaced Raymond Ugone as the owner.

3. The Morrisons agree to promptly execute the dismissals of both eviction complaints which had been filed against Sta-

---

**2.** The WHA has a policy of suspending housing assistance payments on the transfer of the rental property absent an assignment of the HOUSING ASSISTANCE PAYMENT CONTRACT (HAP) from the old landlord to the new land-

lord. This policy is designed to protect Section 8 tenants since without the HAP contract assignment the new landlord is not bound by the Section 8 regulation.

cey O'Brien in the Fourth Division District Court of the State of Rhode Island.[3]

4. Based on paragraphs 1–3, supra, plaintiff Stacey O'Brien agrees that the preliminary injunction motion pending in this litigation may be passed, since it appears that the threat of irreparable harm is no longer present.

WHA, as defendant in this action, then contended that "the stipulation entered into by the parties had afforded O'Brien all the relief she requested in her original complaint, thereby rendering the action moot."

The WHA's motion to dismiss was denied. It argued that the stipulation resolved the preliminary injunction and thus effectively terminated any case or controversy under Article III of the United States Constitution. I held a continuing case or controversy did exist; the declaratory judgment issue remained alive since WHA had not withdrawn its policy and had expressly declined to enter into a settlement agreement concerning future policy.

The parties then reached an agreed stipulation of facts which was filed March 12, 1985. Summary judgment motions were filed by both parties but were never resolved by the Court because the parties reached a settlement and I entered an order accordingly on August 6, 1985.[4]

3. The Morrisons commenced a Trespass and Ejectment action against the plaintiff in the Rhode Island District Court for non payment of rent. (WHA did not forward the subsidy payment to the new landlord). After the commencement of these proceedings, an assignment of the HAP contract was made and it was agreed the payments would continue for the duration of the lease; the case was then dismissed.

4. The August 6 order, in pertinent part, reads:
ORDER
In this Section 8, 24 C.F.R. § 882.207 et seq. contract, the question before the Court is whether or not it is a violation of due process of law not to give a certificate holder tenant notice of the termination of the Housing Assistance Payment (H.A.P.) contract before or after termination.
Without resolving this issue and limiting this order strictly to the operation of the Westerly

## 2. *Prevailing Party* [5]

### a) *Defendant's Contention*

The defendant argues that the August 6, 1985 order does not speak to any of the significant issues raised in the litigation and, therefore, that the plaintiff cannot be said to have prevailed on any issue; that is, it was not decided whether the plaintiffs were entitled to a Declaratory Judgment that the defendant's "actions, inaction and policy, in terminating the Section 8 Lease and contract mid-term, without good cause, and without notice or hearing, and advising the property owners that the Tenant Section 8 Housing Lease is null and void was in violation of Plaintiff's rights under [the Housing Act] and Due Process." Defendant's Memorandum p. 1.

They concede, as they must, that the August 6 order provides for written notice in advance of terminating a rental subsidy but point out that the order is of no account; the WHA had already instituted such a notice practice before the order took effect. The defendant claims that if the notice set forth in the August 6 order is an "achievement" it must be placed in its proper perspective by comparing such "achievement" with what was sought for in the complaint and not realized: "(1) the order did not address the due process question; (2) the order was strictly limited to the operation of the WHA; and (3) the

Housing Authority, by agreement of the parties, it is hereby ordered that henceforth, from and after this date, no Housing Assistance Payment will be terminated without first notifying the affected tenant in writing two weeks in advance of said termination. [It should be noted that the WHA had already instituted such action.] This order is entered subject to review by the Department of Urban Development, Regional Counsel and is without prejudice to any motion for modification by the Westerly Housing Authority.

5. While the defendant makes two distinct arguments—that the plaintiff did not prevail under existing law and that the defendant's actions were not required by law—I will address them together since both relate to whether the plaintiff was a "prevailing" party entitled to attorney's fees.

plaintiff did not receive a declaratory judgment against the WHA." Defendant's Reply Memorandum p. 2. In short, it is the defendant's position that what the plaintiffs got was, comparatively speaking, not significant; "all that the WHA is required to do now that it did not do before this suit is to send a two (2) week notice of termination of housing assistance payments where there is a non-assignment of the HAP contract. This requirement simply formalizes an otherwise existing system through which the WHA would provide oral notice to a tenant facing a suspension of housing assistance payments and provide assistance in finding new housing." Defendant's Reply Memorandum p. 5.

The foregoing was offered in support of defendant's position that there must be a causal connection between the lawsuit and what was achieved; WHA also claims that the notice practice was not required by law and argues, in almost identical fashion, that when the new landlord settled the trespass and ejectment action, an assignment of the HAP contract was made. Ergo, WHA no longer had reason to deny making payments to the new landlord and so it readily agreed to the August 6, 1985 order providing for the written notice, "the importance of which pales in comparison to what was sought."

The defendant additionally argues that, "[e]ven if it could be said that some narrow notion of 'benefit' to the Plaintiffs exists, Plaintiffs would still have to pass the legal test in order to prevail. According to Nadeau, [*Nadeau v. Helgemoe*, 581 F.2d 275 (1st Cir.1978)] '[i]f it has been judicially determined that Defendant's conduct, however beneficial it may be to Plaintiffs' interest, is not required by law, then defendants must be held to have acted gratuitously and Plaintiffs have not prevailed in a legal sense.' 581 F.2d at 281."

The defendant argues that here it indeed acted gratuitously and not as required by law; there was no due process violation because the State Court eviction proceeding provided "extensive adjudicatory" process. It cites *Swann v. Gastonia Housing Authority*, 675 F.2d 1342 (4th Cir.1982); *Jeffries v. Georgia Residential Finance Authority*, 503 F.Supp. 610 (N.D.Ga., 1980), *aff'd*, 678 F.2d 919 (11th Cir.1982), *cert. denied*, 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982). The defendant highlights *Jeffries*:

> ... [T]he State Court proceeding meets the requirements of due process and allows the Section 8 tenant to adequately present his case to a State Court judge prior to a threatened eviction. At the same time, the State Court proceedings and the institution of State Courts are already available and existing. *Id.* at 621.

Finally the defendant states that the landlord sent the plaintiff a thirty (30) day notice of termination; WHA orally informed the plaintiff that payments would be discontinued for nonassignment of the lease, and that at a minimum the plaintiff received a seven day notice of the institution of the State Court eviction proceedings.

### b) *Plaintiff's Contention*

The plaintiff reasons that she has prevailed because O'Brien was able to finish out her entire lease term and the requirement in the order of advance notice of an impending halt in subsidy payments is a significant benefit to the class. The plaintiff claims that because of this notice requirement the "tenant can contact the housing authority and the landlord and determine the reason for the threatened payment halt." In addition, the tenant now has time to seek legal advice "concerning the tenant's rights to an ongoing lease and subsidy in the absence of good cause to evict." Plaintiff's Memorandum at p. 2.

It is also argued that but for this lawsuit neither O'Brien nor the class would have benefited. The plaintiff's point is that at the time of the August 6 order the case was very much alive. For the plaintiff, this suit stopped the eviction and reinstituted the subsidy payments which in turn saved the lease. In addition, the August decree applies to all present and future

Section 8 participants in Westerly who now know there will be prior written notice before subsidy payments are terminated.

The plaintiff further argues that:

"Even if the litigation were not the sole cause of defendant's actions, prevailing party status can still exist. In *Morrison, supra,* [*Morrison v. Ayoob,* 627 F.2d 669 (3rd Cir.1980) ], the Third Circuit explained that:

> Where there is more than one cause, the plaintiff is a prevailing party if the action was a material factor in bringing about the defendant's action. To hold otherwise would be inconsistent with the broad remedial purpose of § 1988 because in many cases causation will hinge on the defendant's motivation. To require some stricter standard of causation would mean that the defendant could hide his true motivation behind what seems a plausible alternate justification. 627 F.2d at 671.

To avoid this rationale, defendant focuses exclusively on the August 1985 consent decree on notice, arguing plaintiff did not gain much. The WHA avoids the fact that the litigation was a catalyst in reversing the WHA position that a one-year lease is rendered null and void by a sale, the very position that started the entire problem. Once that position was reversed, the new owner had no real choice but to accept the resumption of subsidy payments and no longer seek to evict the tenant."

#### c) *Argument and Conclusions of Law*

Facially the defendant presents an appealing point of view. However, I do not find it sound.

In *Nadeau v. Helgemoe,* 581 F.2d 275 (1st Cir.1978), after discussing the Attorney's Fees Awards Act in light of its legislative history and various other court rulings, the First Circuit concluded, "that plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on *any significant* issue in litigation which achieves *some* of the benefit the parties sought in bringing suit." *Id.* at p. 278–79.

Engrafted on this principle of decisional law, however, are certain circumscriptions: "Even if plaintiffs can establish their suit was causally related to the defendants' action which improved their condition, this is only half of their battle. The test they must pass is legal as well as factual. If it has been judicially determined that defendants' conduct, however beneficial it may be to plaintiffs' interests, is not required by law, then defendants must be held to have acted gratuitously and plaintiffs have not prevailed in a legal sense," *Id.* at 281; if a constitutional claim is pressed, which is not "frivolous, unreasonable, or groundless ..." and the resolution of such claim is of a significant issue which achieves some benefit to the plaintiff and the class, then it may be said it was required by law.

Specifically I must decide if the plaintiff's suit was a necessary and important factor, i.e., a causal factor, in achieving the changes undertaken by defendant; I then must decide if the notice mandated by the August 6 order is significant and of *some* benefit to the class and whether the notice mandated by the order vindicated a nonfrivolous constitutional denial to the plaintiff. I find this standard has been satisfied.

The causal connection is clear. But for this lawsuit the defendant would not have provided the additional due process notice they now provide plaintiff and the class. Defendant does not dispute this point.

That the order was significant and of benefit to the class is also apparent. Tough issues were presented in the basic case which need not be decided. However, it is clear we are dealing with one year leases—the defendant concedes this—and that "Section 8 existing housing tenants have a protected property interest in their government subsidized leases because their leases may be terminated mid-year only for cause." *Jeffries v. Georgia Residential Finance Authority,* 678 F.2d 919 (11th Cir. 1982). It is equally clear there can be no cavalier conclusion as to the effect a sale of the property may have on such a lease and

concomitantly the statutory entitlements of the tenant. *Swann v. Gastonia Housing Authority,* 675 F.2d 1342, (4th Cir.1982) ("a tenant in this Section 8 Existing Housing Program is assured by statute he will continue in occupancy in the absence of good cause for eviction. It is now beyond question that such statutory entitlements are protected by the due process clause."); *Reltron Corp. v. Voxakis Enterprises, Inc.,* 57 A.D.2d 134, 359 N.Y.S.2d 276 (1977) (The transfer of the lessor's reversion is a transfer of the lease and its rights and obligations, regardless of whether there is a formal assignment of the lease.) *See also Restatement Property* 2d Sections 16.1–16.3; *Achtar v. Posner,* 189 Md. 559, 56 A.2d 797, 799 (1948); *Douglas v. Pratt,* 102 R.I. 445, 231 A.2d 486 (1967).

As the plaintiff argues, "[a] landlord knows he can withdraw from the program at the end of the term, even if the tenant has complied with all requirements. The tenant knows that the stability and security interest is protected at least during the one year term unless the tenant breaches. Thus, there is a balance between some flexibility for the landlord and 'some certainty in that housing' for the tenant." *See Mitchell v. HUD,* 569 F.Supp. 701, 708 (N.D.Ca.1983); *Levy v. HUD,* No. C84 7983 WWS (N.D.Cal. March 22, 1985).

The point is that notice, as is now required, could prompt the tenant to seek advice to protect the property interest at stake; through counsel the tenant could rely on both state and federal law to contradict WHA's view, taken here, that a conveyance rendered a lease null and void. Such a position is far from frivolous; for example the plaintiff argues;

"HUD's regulation in this area leaves open several questions. 24 C.F.R. Section 882.216 (Informal review of hearing). It requires some elements of due process for certain fact situations, but the present case may or may not fit within the regulation. For example a 'policy issue' is excluded. 24 C.F.R. Section 882.216(b)(2)(i). The WHA's view that a conveyance renders a lease null and void could be a policy issue since the WHA's view did not appear to be limited to O'Brien's particular fact situation. Issues relating to housing quality standards and changes in tenant family size or family composition are excluded by HUD from due process principles. 24 C.F.R. Section 882.215(b)(2)(ii). Also excluded is the decision to terminate payments to the landlord under Section 882.211(c) or to deny a tenant's request to extend the certificate to move to another dwelling. Section 882.215(b)(2)(iii) and (iv). Subsection (c) apparently would apply to the present case. To the extent that HUD regulations purport to authorize a deprivation of the tenant's property interests without due process, they are invalid, and the WHA cannot seek refuge in them." Plaintiff's Summary Judgment Memorandum at p. 29.

That issue is not decided here nor does it have to be. *Nadeau, supra,* does not require proof that the relief is fully mandated by law where there has been a settlement.[6]

---

6. I would note, however, some of the weaknesses in the defendant's argument that it acted gratuitously and not as required by Due Process. To begin with, the plaintiff is correct in stating that it is erroneous for the defendant to claim that "a tenant must receive at a minimum a seven (7) day notice of institution of a state court eviction proceeding." R.I.G.L. § 34–18–9(b)(1), in non-payment of rent cases, allows summary proceedings without notice, if the tenant is more than fifteen days in arrears. It is the hearing which is set for the next court day following a seven day answer period; at that point the action has already been started. At any rate, the eviction proceeding does not answer the due process requirement. The plaintiff states it well that, "[t]he key property issue is

the continued payment of the rental subsidy, by the Public Housing Authority, on behalf of the tenant"—the plaintiff was entitled to advance written notice of the halt in those payments. If the landlord does not receive the WHA payments, and fifteen days pass, and the landlord starts summary proceedings for this non-payment of rent, then the first notice the tenant will have is the complaint and summons. This scenario could happen to a tenant who has paid her share of the rent and may not even know there is a problem brewing.

The eviction hearing will involve the landlord and the tenant; the PHA is not a party. The Court therefore would be unable to order the PHA to resume payments. Thus, the PHA's de-

I believe that what has been stated herein sufficiently shows that the plaintiff has met the causal relationship and legal tests, and that having been done the question has been answered, "whether if plaintiffs had continued to press their claim under traditional constitutional theory, their action could be considered 'frivolous, unreasonable, or groundless,' or that the plaintiff continued to litigate after it clearly became so." *Nadeau, supra,* at 281. I do not believe *Nadeau* ever intended to return every settled case under § 1983 to its pre-settlement stage in order to decide an attorney's fee application; if this were so, then I would have to render an opinion on the declaratory relief requested—in other words, as they say, return to "square 1" and decide the summary judgment motions which were pending at the time of the August 6 order.

Unlike *Bush v. Bays,* 463 F.Supp. 59 (E.D.Va.1978), cited by the defendant as authority for the proposition that the legal test requires full adjudication of the original complaint to show that the relief was legally required, where the lawsuit played no part in obtaining the relief, here only the plaintiff's action brought about the ultimate relief. Whatever other way *Bush* may be read, I do not find it persuasive. *Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) clearly tells us that "[n]othing in the language of § 1988 conditions the District Courts' power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated." *Id.* 100 S.Ct. at 2575. "The fact that respondent prevailed through a settlement rather than through litigation does not weaken her claim to fees." *Id.*

I conclude that the notice requirement is of material significance and benefit.

### 3. The Justice of Awarding an Attorney's Fee

The defendant also argues a fee should not be awarded because the consent order made no mention of a fee, that Legal Services representing the plaintiff was not acting in the capacity of a Private Attorney General and that taking of money from a tax-supported public housing authority does not serve the purposes of the Civil Rights Attorney's Fees Act.

The defendant feels the fee issue should have been part of the consent order. To the contrary I quite agree with the plaintiff that it would have been improper to do so. It seems to me this point is too well established to warrant extensive discussion. *See Lazar v. Pierce,* 757 F.2d 435 (1st Cir.1985); "Attorney-Client Conflicts of Interest and Concept of Non-Negotiable Fee Awards under 42 U.S.C. § 1988" 55 U.Colo. L.R. 431 (1984); *Benitez v. Collazo,* 571 F.Supp. 246, 249–50 (D.P.R.1983).

And the fact that entitlement to fees is not affected by plaintiffs' representation by a legal services organization has been settled. *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 1546–47, 79 L.Ed.2d 891 (1984).

Finally, on the question of entitlement there is no merit to the defendant's argument that a public housing authority enjoys a special status. I agree with the reasoning of *Gautreaux v. Chicago Housing Authority,* 690 F.2d 601, 612–13 (7th Cir.1982),

nial of due process before the halt in payments is not cured by the later court proceeding. *Swann* and *Jeffries, supra,* are inapposite. The defendant fails to recognize that *Jeffries* found protected property rights in an expectation of continued occupancy and receipt of rents and utility subsidies. 503 F.Supp. at 616–18. Furthermore, *Jeffries* specifically condemned summary eviction proceedings in state courts; it unequivocally stated that the state court must provide an adequate forum for the constitutional claim. In this case the state court proceeding was totally inadequate. *Id.* at 621–22. Again, it

is a summary proceeding with arrearage of rent as the only issue, it is commenced with no prior notice to the tenant, and there is no equitable right to tender arrearage. And in this case the plaintiff in the state court proceeding was not at the time a participant in the Section 8 program. *Swann* also required notice and an opportunity to respond prior to the commencement of the eviction proceeding. Also in *Swann* the eviction was not a summary proceeding but rather was a full due process hearing where even constitutional issues could be raised. *Id.* at 1347–48.

*cert. denied*, 461 U.S. 961, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983).

In the hearing on January 30, 1986, the plaintiffs may include in their presentation to establish the amount to be awarded, the hours and costs expended in answering the defendant's objection in this action to any award being made.

An order will be prepared accordingly.