196 N.J. Super. 212 (1984)
482 A.2d 40
R & D REALTY, PLAINTIFF,
v.
CAROLYN SHIELDS, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division Special Civil Part, Bergen County.
May 31, 1984.
*214 Walter D. Nealy for plaintiff (Eddie Raynord Hadden, attorney).
Margaret Kean for defendants (John L. Weichsel, attorney).
BOGGIA, J.S.C.
The above designated cases present common issues of law which have never been addressed by the New Jersey Courts and, accordingly, this opinion and decision will be applicable and dispositive of each of said actions. In particular, this Court will address the following legal issues:
1. Whether good cause is required for nonrenewal of an Existing Housing Program Lease under Section 8 of the United States Housing Act of 1937, 42 U.S.C.A. § 1437f.
2. Whether the desire to substantially increase the amount of rent for a particular unit constitutes good cause for failing to renew a Section 8 Lease.
3. Whether it is a reasonable change in a lease under the New Jersey Anti-Eviction Act, N.J.S.A. 2A:18-61.1(i), to require *215 a tenant to pay the full amount of rent, which, under the old lease, was paid in part by the Housing Authority where such payments continue to be available to the landlord.
The facts in these cases are similar and may be briefly summarized.
In June of 1983, plaintiff Daryl Davis, doing business as R & D Realty, purchased premises known as 229 Waldo Place in Englewood, New Jersey. At the time of the purchase, all three defendants were renting units at the subject premises pursuant to an Existing Housing Program Lease under Section 8 of the United States Housing Act of 1937, 42 U.S.C.A. § 1437f. Plaintiff's predecessor in interest, Carmen Brown, had executed a Housing Assistance Payments Contract (hereinafter referred to as H.A.P. Contract) with the Englewood Housing Authority for each unit being rented to the defendants.
The H.A.P. Contract provided, among other things, that a maximum monthly rent would be charged by the landlord for a particular unit, and that the Englewood Housing Authority would make housing assistance payments directly to the landlord each month toward part of the contract rent. The family covered by the contract would be responsible for paying the balance of the monthly rent to the landlord.
Plaintiff's predecessor in interest had also executed a Section 8 Existing Housing Program Lease with each of the defendants pursuant to the terms set out in the H.A.P. Contracts. Each lease had a one year term and provided, as in the H.A.P. Contracts, that the Englewood Housing Authority would be responsible for a designated portion of the assisted family's rent.
Plaintiff became bound by the H.A.P. Contracts covering the respective units of the defendants since he agreed in writing to comply with all the terms and conditions of said contracts at the time of the transfer of title of the subject premises.
Before each defendant's lease term had expired, the Englewood Housing Authority forwarded a new H.A.P. Contract and *216 assisted lease to the plaintiff for renewal. The plaintiff decided that for business reasons he did not wish to renew the H.A.P. Contract covering each defendant's unit. Thus, at the expiration of each defendant's assisted lease, all subsidized payments by the Englewood Housing Authority ceased since such payments could only be made if the H.A.P. Contracts covering their unit had been renewed. The defendants thereafter became responsible for paying the full amount of their monthly rent. The testimony at the trial indicates that all of the defendants continue to be eligible for assistance payments.
Each defendant remained in possession of the rented premises after their assisted lease had expired, and by operation of law became a month-to-month tenant under N.J.S.A. 46:8-10. Plaintiff subsequently brought these actions for recovery of the rental units based upon the defendants' failure to pay all the rent due and owing.
Plaintiff contends that there is a good cause for eviction in these cases under the New Jersey Summary Dispossess Act, N.J.S.A. 2A:18-61.1, in that each of the defendants failed to pay rent that is due and owing. He maintains that the increase in the monthly rental obligation of the defendants is a reasonable change in the new lease for three reasons. First, he wishes to withdraw from the Section 8 Program because he no longer wants his private business affairs entangled in governmental regulation. Second, this is a situation where he does not seek to terminate the defendants' tenancy, but rather only to withdraw from the subsidy program. Finally, an examination of the federal legislation governing the Section 8 Program reveals that a landlord has no duty to renew a Section 8 Lease.
The defendant, Carolyn Shields, who is represented by counsel, asserts that the plaintiff-landlord has created the entire ground for eviction, i.e., nonpayment of rent, by refusing to renew the H.A.P. Contract and the assisted lease with the Englewood Housing Authority. She alleges that plaintiff's primary motive for withdrawing from the Section 8 Rent Subsidy Program is so that he may relet the apartment at a substantially *217 higher rent outside the approved channels available under the Englewood Rent Control Ordinance. She further asserts that to require a tenant to pay the full amount of rent when a rent subsidy continues to be available to the landlord constitutes an unreasonable change in the new lease and is violative of N.J.S.A. 2A:18-61.1(i). Finally, she maintans that the lease between the parties is governed by the New Jersey Anti-Eviction Act notwithstanding any contrary federal laws or regulations in this area.
The court will now address the important issue of whether good cause is required for nonrenewal of an Existing Housing Program Lease under Section 8 of the United States Housing Act of 1937, 42 U.S.C.A. § 1437f.
Prior to October 1, 1981, the Low Income Housing Act provided that all H.A.P. Contracts between the landlord and the Housing Authority contain a provision that "the agency shall have the sole right to give notice to vacate, with the owner having the right to make representation to the agency for termination of the tenancy." 42 U.S.C.A. § 1437f(d)(1)(B) (1976). In Swann v. Gastonia Housing Authority, 675 F.2d 1342 (4th Cir.1982), the court found that a good cause requirement for failure to renew a housing assistance lease was implied under this old version of the act. The court reasoned that as the act gave the housing authority the sole right to give notice to vacate, this provision would be pointless if the housing authority was not to exercise some judgment before an eviction occurred. Id. at 1345.
An amended version of Section 1437f took effect for all leases entered into after October 1, 1982 and applies to the leases in the present case. This new version of Section 1437f states:
Contracts to make assistance payments entered into by a public housing agency with an owner of existing housing units shall provide (with respect to any unit) that 
........
(B)(i) the lease between the tenant and the owner shall be for at least one year or the term of such contract, whichever is shorter, and shall contain other terms *218 and conditions specified by the Secretary; and (ii) the owner shall not terminate the tenancy except for serious or repeated violation of the terms and conditions of the lease, for violation of applicable Federal, State or local law, or for other good cause;
........
[42 U.S.C.A. § 1437f(d)(1),]
The Department of Housing and Urban Development issued the following regulation interpreting the above amended section of the statute:
The Contract and the Assisted Lease shall provide with respect to the unit that the Owner shall neither (i) terminate the tenancy during the term of the Contract and Assisted Lease, nor (ii) refuse to enter into a new Assisted Lease with the family, unless the owner decided not to enter into a new Contract with respect to the unit, except for; (1) Serious or repeated violation of the terms and conditions of the Lease; (2) violation of applicable Federal, State or Local Law; or (3) Other good cause.
[24 C.F.R. 882.215(b).]
The Department's interpretation of the regulation establishes what can be best described as an "individual unit loophole." More specifically, the Department feels that the statutory good cause standards for termination of the tenancy need only be met by a landlord if he intends on leasing the unit to another assisted family. If, however, the landlord seeks to withdraw the particular unit from the housing assistance program, the landlord need not meet the good cause standards when deciding not to renew the assisted lease.
In Mitchell v. U.S. Department of Housing and Urban Development, 569 F. Supp. 701 (N.D.Cal. 1983), the court found that the "individual unit loophole" created by the Department's interpretation of Section 1437f is contrary to the Congressional intent to help low income families secure a decent place to live, and to promote economically mixed housing. Id. at 708. The court reasoned that "[l]andlords could comply with their housing assistance obligations while `playing musical chairs' with their apartments until they find the low income tenants they desire." Id. The court went on to find that the continual relocation which would surely result for a large percentage of assisted tenants would defeat the elements of security and stability essential for a residence to become a home. Id.
*219 This court agrees with the Mitchell analysis and holds that 24 C.F.R. 882.215(b) is invalid insofar as it creates an "individual unit loophole." The court further holds that a good cause requirement for nonrenewal of an Existing Housing Program Lease can be implied from the language contained in 42 U.S.C.A. § 1437f(d)(1)(B)(ii).
The next issue which must be determined by the court is whether plaintiff has shown any good cause for his failure to renew each defendant's assisted lease. Although good cause can be business or economically based, Swann v. Gastonia Housing Authority, 502 F. Supp. 362, 367 (W.D.N.C. 1980), aff'd on other grounds, 675 F.2d 1342 (4th Cir.1982), this court finds that the desire to substantially increase the amount of rent for a particular unit does not constitute good cause for failing to renew the assisted lease. Indeed, the Low Income Housing Act contains several provisions which enable a landlord to obtain a higher rental for an assisted unit. Such provisions provide that:
(c)(2)(A) The assistance contract shall provide for adjustment annually or more frequently in the maximum monthly rents for units covered by the contract to reflect changes in the fair market rentals established in the housing area for similar types and sizes of dwelling units or, if the Secretary determines, on the basis of a reasonable formula.
(c)(2)(B) The Contract shall further provide for the Secretary to make additional adjustments in the maximum monthly rent for units under contract to the extent he determines such adjustments are necessary to reflect increases in actual and necessary expenses of owning and maintaining the units which have resulted from substantial general increases in real property taxes, utility rates, or similar costs which are not adequately compensated for by the adjustment in the maximum monthly rent authorized by subparagraph (A).
(c)(2)(C) Adjustments in the maximum rents as hereinbefore provided shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the Secretary.
[42 U.S.C.A. § 1437f.]
Thus, the plaintiff should file an application for rent increases with the Englewood Rent Control Board and with the Englewood Housing Authority if he wishes to obtain higher rentals for these units. It is significant to note that under the act, a landlord should be able to obtain approximately the same amount of rent for an assisted unit as for a comparable *220 unassisted unit. The court further finds that the plaintiff cannot use nonpayment of rent as a ground for evicting these defendants since he terminated their assisted leases without good cause. None of these defendants would have defaulted on their rent payments had assistance from the Englewood Housing Authority continued.
The final issue raised by the parties is whether it is a reasonable change in a lease under N.J.S.A. 2A:18-61.1(i) to require a tenant to pay the full amount of rent, which, under the old lease, was paid in part by the Housing Authority where such assisted payments continue to be available to the landlord. The court holds that said change is reasonable if the landlord has shown good cause for nonrenewal of the assisted lease under the United States Housing Act. To hold otherwise would mean that a landlord would be locked into the Section 8 Program ad infinitum and this would be contrary to the provisions of the United States Housing Act. Here, however, the plaintiff has failed to show good cause for nonrenewal of the leases, and this change in the new lease is therefore unreasonable under N.J.S.A. 2A:18-61.1(i).
For the foregoing reasons, a judgment of dismissal of each complaint is entered in favor of all of the defendants.