IVY HILL PARK APARTMENTS, PLAINTIFF, v. MARGARET MARTIN, DEFENDANT.

Superior Court of New Jersey
Law Division Essex County
Special Civil Part

Decided October 17, 1985.

---

*Phillip J. Battaglia* for plaintiff (*Goldman, Carlet, Garrison, Bertoni & Klein,* attorneys).

*Capitola Young* for defendant.

RUDD, J.S.C.

This is a summary dispossess action instituted by landlord Ivy Hill Park Apartments pursuant to *N.J.S.A.* 2A:18–61.1 against tenant Margaret Martin.

The question herein is whether, under § 8 of the United States Housing Act of 1937, 42 *U.S.C.A.* § 1437f, a landlord can refuse to renew a § 8 subsidy lease, and consequently whether, upon

the facts presented, *N.J.S.A.* 2A:18–61.1 may be invoked (when there's a nonpayment of rent) to evict the tenant.

The facts here can be briefly summarized. Ivy Hill Park apartments is an apartment complex in Newark, New Jersey. Martin has lived in a single unit of this apartment complex under a valid lease since July of 1983. Martin is a public assistance recipient and became eligible for a rent subsidy from the United States Department of Housing and Urban Development (H.U.D.) under the § 8 housing program of the National Housing Act.

Under 42 *U.S.C.A.* § 1437f, the Department of Community Affairs of New Jersey (D.C.A.) acts as a conduit of H.U.D. for the payment of the subsidy. Martin's rent is $371 a month. Martin pays $69 a month, and the balance of $302 is paid by H.U.D. through D.C.A. to Ivy Hill. In order for the landlord to be paid each month by H.U.D., several forms must be filled out by the landlord for each and every § 8 tenant. Ivy Hill Park apartments has approximately two hundred units which receive § 8 subsidies. Ivy Hill refuses to cooperate and the § 8 payment was terminated resulting in an inability on the tenant's part to pay the full rent. The landlord asks for possession for this "nonpayment" of rent. It asks for possession on other grounds as well.

In May 1984 Martin received a notice to cease from Ivy Hill alleging that Martin had kept three dogs in her apartment in violation of the lease agreement, and that these dogs had damaged the apartment and adjoining hallway. Although not established on the record on what date the dogs were removed from the premises, as of this court date, the testimony established that the dogs were no longer in the apartment. In June 1985 Ivy Hill issued another notice to cease alleging that Martin had violated her lease agreement by being unduly noisy. No follow-up action was ever taken by Ivy Hill with respect to this noise issue and the testimony revealed that this alleged violation was no longer a problem, *i.e.*, the notices worked; the

violations ceased. It was on the same June day that the second notice to cease was delivered that Martin received a letter stating that Ivy Hill was not going to renew her § 8 lease upon the expiration of the current lease on July 31, 1985. On direct examination the manager of Ivy Hill, Ms. Hammer, testified that Ivy Hill was phasing out the § 8 tenancies. Ms. Hammer testified that other § 8 tenants in the future would receive similar notices upon the expiration of their § 8 leases. The testimony of Ms. Hammer, however, was that she did not know if other § 8 tenants' leases were in fact renewed or terminated after Martin received her § 8 nonrenewal notice.

Ivy Hill did not fill out or send in the § 8 subsidy forms for Martin and demanded Martin pay the full amount of rent totalling $371 a month. Martin offered to pay her § 8 share of $69 a month but this was refused by Ivy Hill. Additionally, Ivy Hill did not offer Martin a new written lease. At the beginning of these proceedings, Martin deposited $276 with the court clerk representing her § 8 share of the rent for the months of July, August, September and October.

Section 8 of the United States Housing Act of 1937, 42 *U.S.C.A.* § 1437, was promulgated to assist states and their political subdivisions to provide safe and adequate housing for lower income families. At the same time, the act sought to vest the maximum amount of responsibility for the administration of this program in the states and their political subdivisions. *See* 42 *U.S.C.A.* § 1437. D.C.A acts as the conduit for H.U.D. in the § 8 landlord-tenant relationship.

Section 8 is a subsidy program whereby the D.C.A. through H.U.D. pays a subsidy of the tenant's rent to the landlord. The tenant, in turn, pays the remaining balance of the rent to the landlord. 42 *U.S.C.A.* § 1437f(c)(1). In order for the landlord to be paid by D.C.A., the landlord must fill out and send in the necessary forms. To be eligible for the § 8 subsidy program, a tenant must be categorized as a lower-income recipient. 42

*U.S.C.A.* § 1437a(a); *See* 42 *U.S.C.A.* § 1437a(b)(2). The terms of the § 8 landlord-tenant relationship are governed by a one-year written lease or contract. 42 *U.S.C.A.* § 1437f(d)(1)(B)(i).

The federal law as to termination of a § 8 lease states:

(1) Contracts to make assistance payments entered into by a public housing agency with an owner of existing housing units shall provide (with respect to any unit) that—....

(ii) the owner shall not terminate the tenancy except for serious or repeated violation of the terms and conditions of the lease, for violation of applicable Federal, State or Local law or for *other good cause.* [42 *U.S.C.A.* 1437f(d)(1); emphasis supplied]

H.U.D. issued the following regulation interpreting the above statute:

The Contract and the Assisted Lease shall provide with respect to the unit that the owner shall neither (i) terminate the tenancy during the term of the Contract and Assisted Lease, nor (ii) refuse to enter into a new Assisted Lease with the family unless the owner decides not to enter into a new contract with respect to the unit except for (1) Serious or repeated violation of the terms and conditions of the Lease; (2) violation of applicable Federal, State or Local law; or (3) *other good cause.* [24 *C.F.R.* 882.215(b); emphasis supplied]

The federal law and the ensuing interpretations establish that an existing lease or contract can not be terminated early unless for the reasons stated. Thus, where a lease is in effect and the tenant is abiding by its conditions, the tenant is protected from arbitrary ouster. 42 *U.S.C.A.* § 1437f(d)(1). The lease in this case terminated.

The question then arises, when, if ever, can a landlord disavow § 8 subsidy leases as binding on him? Can a landlord literally on a whim, to avoid the bureacracy of government, or for any reason, unilaterally declare he no longer wishes to take part in the § 8 arrangement?

"For other good cause," 42 *U.S.C.A.* § 1437f(d)(1)(B)(ii), is the standard to be applied in situations where the landlord refuses to renew a § 8 subsidy lease. *See R. & D Realty v. Shields,* 196 *N.J.Super.* 212, 219 (Law Div.1984); *see Mitchell v. U.S. Dept. of Housing and Urban Development,* 569 *F.Supp.* 701, 704 (N.D.Cal.1983); *See* 24 *C.F.R.* 882.215(b).

The federal statutes, regulations and cases, however, never define "good cause." What does "good cause" mean with respect to 42 *U.S.C.A.* § 1437f? Does "good cause" mean the exact same thing as defined by *N.J.S.A.* 2A:18.61.1, or does it mean more?

The court finds that when considering a tenant's conduct "good cause" under the federal statute means and should mean the same as it does under New Jersey's *N.J.S.A.* 2A:18–61.1 (causes for tenants termination) and is congruent with it. Where, however, "good cause" relates and encompasses a landlord's conduct, the definition must, of necessity, be much broader.

■ Specifically in a situation where a landlord refuses to renew a § 8 lease because the landlord wishes to get out of the § 8 program, this court finds that a landlord has "good cause," *i.e.*, he has the right to disinvolve himself. But, he must do so fairly, observing due process and constitutional protections. He may not discriminate; he may not pick and choose; he must treat all tenants equally. General common law notions of fair play, and constitutional restrictions, apply to such landlords who wish to terminate § 8 programs. *U.S. Const.*, Amend. XVI; *see Jeffries v. Georgia Residential Finance Authority*, 503 *F.Supp.* 610, 618, 619 (N.D.Ga.1980); *see Swann v. Gastonia Housing Authority*, 675 *F.*2d 1342, 1345–1356 (4 Cir.1982). The landlord must proceed in an orderly process, singling no one out, prejudiced against no one and treating all fairly. Depending on the timing of the termination of various tenant's leases, he may start with any one tenant's § 8 lease. Once this is begun the landlord thereafter must refuse to renew each and every § 8 tenancy as the leases sequentially expire.

■ In this case, Ivy Hill was frustrated in its eviction of Martin. Notices to cease (dog complaints, noise complaints) were complied with by Martin in a manner consistent with continued tenancy. Ivy Hill then sought to use § 8 as a way to rid themselves of Martin by alleging they were phasing them-

selves out of the § 8 program. Ivy Hill, however, did not prove that they were conducting an orderly scheme to terminate their participation in the program. Ms. Hammer was specifically vague as to whether or not other § 8 tenancies had been terminated after Martin had received her nonrenewal. Thus Ivy Hill's actions established that they were trying to use the § 8 provisions as a sword to rid themselves of a tenant whom they thought was undesirable. This manipulation of the § 8 statutes should not be tolerated.

It is therefore the judgment of the court that Ivy Hill did not have "good cause" under the federal statute to terminate the lease and consequently it has no "good cause" for possession under 2A:18–61.1. If its rent is unpaid, it is because its conduct in terminating § 8 was improper and its nonpayment of rent is its own fault.

The complaint is dismissed.