220 N.J. Super. 1 (1987)
531 A.2d 361
TEMPLETON ARMS, PLAINTIFF-APPELLANT,
v.
ADA FEINS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 28, 1987.
Decided August 10, 1987.
*2 Before Judges O'BRIEN and MacKENZIE.
Howard S. Mitnick argued the cause for plaintiff-appellant (John M. Mitnick on the brief).
*3 Elizabeth Athos argued the cause for defendant-respondent (Union County Legal Services Corp., attorney; Elizabeth Athos and 03 Alfred Donnarumma on the brief).
The opinion of the court was delivered by MacKENZIE, J.S.C. (temporarily assigned).
Plaintiff Templeton Arms, the owner of a 104-unit apartment complex, appeals from the dismissal of its summary dispossess action brought against defendant Ada Feins for nonpayment of rent for April and May 1986, N.J.S.A. 2A:18-61.1(a). Mrs. Feins, now 73 years old, has been a tenant of Templeton Arms since April 1981. Until March 31, 1986, her rent had been subsidized by the United States Department of Housing and Urban Development (H.U.D.) under Section 8 of the United States Housing Act of 1937, 42 U.S.C.A. § 1437f ("Section 8 program"). While conceding that she had not paid the rent demanded by Templeton Arms, Mrs. Feins contended that the landlord failed to show good cause for nonrenewal of her Section 8 Existing Housing Program Lease ("Section 8 lease") which would have guaranteed payment of the rent claimed due.
Templeton Arms argued that it had good cause for nonrenewal because it sought to terminate its participation in the Section 8 program, a program in which Mrs. Feins was the only participating tenant. The trial judge, after hearing oral argument, issued a letter opinion in which he set forth his finding that Templeton Arms' reasons for termination were administrative in nature and did not constitute good cause. The complaint was dismissed, leaving Mrs. Feins in possession and under no obligation to pay the full amount of rent[1].
*4 The present appeal raises numerous questions respecting the interpretation of the "good cause" requirement for termination of Section 8 tenancies, 42 U.S.C.A. § 1437f(d)(1)(B)(ii); 24 C.F.R. 882.215(c)(1)(iii), and the application of that standard in the particular factual circumstances of this case. We hold that a landlord must establish good cause for nonrenewal of a Section 8 lease, even where he seeks to terminate his participation in the Section 8 program, and irrespective of the number of subsidized tenancies involved. The expressed desire to withdraw from the program does not, by itself, constitute good cause in the absence of factual findings necessary to support this essentially legal conclusion. Although the trial judge invoked the appropriate standard, we reverse and remand for an evidentiary hearing to determine whether Templeton Arms has good cause.
The lower-income housing assistance program established under 42 U.S.C.A. § 1437f is "[f]or the purpose of aiding lower-income families in obtaining a decent place to live and of promoting economically mixed housing." 42 U.S.C.A. § 1437f(a). A local public housing agency, here the New Jersey Department of Community Affairs ("D.C.A."), selects those qualified to participate in the Section 8 program. 24 C.F.R. 882.209(a); 42 U.S.C.A. § 1437a(a), (b)(2) and (b)(3). An eligible tenant is responsible for finding an appropriate apartment in the private rental market and an owner willing to participate in the program. 24 C.F.R. 882.209. After approval of the dwelling unit, two documents must be executed in order to implement the subsidy program: a Section 8 lease between the landlord and tenant, obligating the tenant to pay his monthly rental contribution; and, a housing assistance payments contract *5 ("H.A.P. contract") between the landlord and the D.C.A., obligating the D.C.A. to pay the landlord the difference between the tenant's contribution and the approved contract rent. 24 C.F.R. 882.209(k); 24 C.F.R. 882.102. The D.C.A. acts as a conduit for H.U.D. in paying the rent subsidy to the landlord, distributing subsidy funds received pursuant to an annual contributions contract with H.U.D. 24 C.F.R. 882.102; 24 C.F.R. 882.104.
Mrs. Feins originally entered into a standard form lease with Templeton Arms at a monthly, unsubsidized rent of $285, effective April 1, 1981. Shortly thereafter, she applied to the D.C.A. and qualified for H.U.D. assistance, while contemporaneously Templeton Arms agreed to participate in the Section 8 program. Consistent with the regulatory scheme, a Section 8 lease and a H.A.P. contract were executed. The parties continued their participation in the program through annual renewals of the Section 8 lease and the corresponding H.A.P. contract; a standard form, landlord-tenant lease was renewed annually as well. The last H.A.P. contract and Section 8 lease, which covered the period April 1, 1985 to March 31, 1986, provided that the total contract rent payable was $350 per month, of which Mrs. Feins was to contribute $71, and the D.C.A. the balance of $279.
Sometime in early 1986, Templeton Arms decided it no longer wished to continue its participation in the Section 8 program. Through correspondence, Howard S. Mitnick, managing agent of Templeton Arms and its attorney, advised both Mrs. Feins and the D.C.A. that Templeton Arms would not enter into a new H.A.P. contract. In his letter of February 25, 1986 to a representative of the D.C.A., Mr. Mitnick explained,
My concern is that the proposed forms forwarded by you place additional obligations on the Landlord solely for qualifying for this assistance program, which the Landlord would not otherwise agree to. There is no inducement to the Landlord to extend its responsibilities or obligations to qualify for this one tenancy.
*6 A copy of this letter was sent to Mrs. Feins. In a letter to Mrs. Feins dated March 12, 1986, Mr. Mitnick stated that the H.A.P. contract "imposes conditions upon the Landlord other than those governing Leases with all of the other tenants at [sic] the property, and the Landlord objects to certain provisions in the required Contract." As was conveyed in both letters, however, Templeton Arms did offer Mrs. Feins a new, unsubsidized lease, effective April 1, 1986 at $364 per month.[2]
At oral argument, Mr. Mitnick concurred with the trial judge's statement that Templeton Arms wanted to discontinue the subsidy program because "it involves a lot [of] paperwork." Mr. Mitnick further elaborated, however, that the landlord "decided not to continue with the program primarily because the requirements of the H.U.D. contract placed additional burdens, including full disclosure of records and many other provisions which are not in the standard ... lease that the landlord wishes to be bound by."
The provision of the federal statute which governs termination of a Section 8 tenancy reads in pertinent part:
(1) Contracts to make assistance payments entered into by a public housing agency with an owner of existing housing units shall provide (with respect to any unit) that  ...
(ii) the owner shall not terminate the tenancy except for serious or repeated violation of the terms and conditions of the lease, for violation of applicable Federal, State, or local law, or for other good cause; [42 U.S.C.A. § 1437f(d)(1)(B)(ii) (emphasis supplied)].
The H.U.D. regulation implementing the above statute provides:

*7 (c) Termination of tenancy (for Leases entered into on or after October 1, 1981).
(1) The Owner shall not terminate the tenancy except for:
(i) Serious or repeated violation of the terms and conditions of the Lease;
(ii) Violation of Federal, State, or local law which imposes obligations on the tenant in connection with the occupancy or use of the dwelling unit and surrounding premises; or
(iii) Other good cause. [24 C.F.R. 882.215(c) (emphasis supplied)].
As is evident, neither the statute nor the regulation expressly requires good cause for nonrenewal of a Section 8 lease. They are also silent as to whether good cause is required when a landlord seeks to withdraw entirely from the Section 8 program. Moreover, although examples of "other good cause" are provided in 24 C.F.R. 882.215(c)(2), the standard is not defined.
Both parties argued that Ivy Hill Park Apartments v. Martin, 207 N.J. Super. 594 (Law Div. 1985) is supportive of their respective positions. In Ivy Hill, plaintiff's landlord similarly had brought a summary dispossess action against a tenant for nonpayment of rent pursuant to N.J.S.A. 2A:18-61.1. Martin was one of approximately two hundred tenants in the residential complex who received H.U.D. assistance under the Section 8 program. Prior to the expiration of Martin's lease, the landlord sent her various notices to cease, alleging tenant misconduct and lease violations. Ivy Hill also notified Martin that it was not going to renew the Section 8 lease. Ms. Hammer, the manager of Ivy Hill, testified that Ivy Hill was "phasing out the § 8 tenancies." Id. at 597. The court was thus confronted with the question of whether a landlord can "on a whim, to avoid the bureacracy [sic] of government, or for any reason, unilaterally declare he no longer wishes to take part in the § 8 arrangement?" Id. at 598. Construction of the good cause requirement, as set forth in both 42 U.S.C.A. § 1437f(d)(1)(B)(ii) and N.J.S.A. 2A:18-61.1, was also at issue.
The trial judge determined that when "good cause" relates to a tenant's conduct, its meaning is the same under both statutes. With respect to a landlord's conduct, however, he found that the definition of "good cause" under the federal statute was *8 "of necessity" much broader. Id. at 599. The trial judge explained:
Specifically in a situation where a landlord refuses to renew a § 8 lease because the landlord wishes to get out of the § 8 program, this court finds that a landlord has "good cause," i.e., he has the right to disinvolve himself. But, he must do so fairly, observing due process and constitutional protections. He may not discriminate; he may not pick and choose; he must treat all tenants equally. General common law notions of fair play, and constitutional restrictions, apply to such landlords who wish to terminate § 8 programs. U.S. Const., Amend. XVI; see Jeffries v. Georgia Residential Finance Authority, 503 F. Supp. 610, 618, 619 (N.D.Ga. 1980); see Swann v. Gastonia Housing Authority, 675 F.2d 1342, 1345-1356 (4 Cir.1982). The landlord must proceed in an orderly process, singling no one out, prejudiced against no one and treating all fairly. Depending on the timing of the termination of various tenant's [sic] leases, he may start with any one tenant's § 8 lease. Once this is begun the landlord thereafter must refuse to renew each and every § 8 tenancy as the leases sequentially expire. [Ibid.].
Applying the foregoing principles, the court concluded that Ivy Hill did not have good cause under the federal statute as:
Ivy Hill ... sought to use § 8 as a way to rid themselves of Martin by alleging they were phasing themselves out of the § 8 program. Ivy Hill, however, did not prove that they were conducting an orderly scheme to terminate their participation in the program. Ms. Hammer was specifically vague as to whether or not other § 8 tenancies had been terminated after Martin had received her nonrenewal. [Id. at 599-600].
Having found that Ivy Hill lacked good cause under the federal statute, the trial judge also determined that it lacked good cause for possession under N.J.S.A. 2A:18-61.1. Id. at 600.
Templeton Arms, relying on Ivy Hill, argued that in exercising its clear right to withdraw from the Section 8 program, it did so fairly and in a nondiscriminatory manner. In contrast to the landlord in Ivy Hill, Templeton Arms had only one tenant involved in the program. It was not concluding its participation as a means of eliminating a difficult or unwanted tenant and, in fact, offered Mrs. Feins a new, standard form lease. Counsel also represented that Templeton Arms had refused to participate in the program in September 1985, when so requested by a tenant in the complex, as well as when requested by a prospective tenant. In short, Templeton Arms claimed that its desire to withdraw from the program constituted good cause in *9 the absence of any indication that it was unfair to Mrs. Feins or was manipulative of the Section 8 program or policies.
The trial judge, however, interpreted and applied Ivy Hill in the manner urged by Mrs. Feins. Although Templeton Arms desired to drop out of the Section 8 program, this itself, contrary to the court's suggestion in Ivy Hill, was not sufficient. The judge found that Templeton Arms' reasons for terminating participation did not constitute good cause, reasoning: "If all landlords who participated in the Section 8 rentals did not want to `fill out the forms' then there would be no Section 8 housing available." Moreover, he found that Mrs. Feins was not afforded due process of law because she was not given 45 days notice of changes in the terms of the renewal lease, as was required by the standard form lease between the parties. The judge further concluded, "Under R & D Realty [v. Shields] [196 N.J. Super. 212, 220 (Law Div. 1984)], it is an unreasonable change in a lease according to N.J.S.A. 2A:18-61.1(i) to require a tenant to pay the full amount of rent where good cause has not been shown." Thus, Templeton Arms failed to show good cause under both the federal statute, 42 U.S.C.A. § 1437f(d)(1)(B)(ii), and N.J.S.A. 2A:18-61.1.
Templeton Arms requested a rehearing during which testimony and other reliable evidence could be presented in order to clarify the perceived erroneous factual conclusions upon which the judge's opinion was based. The request was denied.
On appeal, Templeton Arms advances three alternative arguments in support of its position that the holding of the trial court must be reversed: (1) the good cause requirement for termination of tenancy ends with the simultaneous expiration of the H.A.P. contract and Section 8 lease; (2) a landlord is exempt from the good cause requirement for termination of tenancy if he has moved to end his participation in the Section 8 program in good faith; and, (3) even if good cause is required for nonrenewal and for withdrawal from the program, good cause exists in this case. We address each argument in turn.

*10 I. GOOD CAUSE FOR NONRENEWAL
Templeton Arms argues that the good cause requirement applies only to situations in which the landlord seeks to evict the tenant during the concurrent terms of the H.A.P. contract and the Section 8 lease. According to Templeton Arms, when the lease term lapses, there is no longer an underlying tenancy and thus the conditions for "termination of tenancy," as enumerated in 24 C.F.R. 882.215(c)(1), need not be met. To support this interpretation, Templeton Arms points to the common and plain meaning of "tenancy," and the shared expectation of the parties that the landlord intends to participate in the program only for a limited time period. Moreover, Templeton Arms argues that 42 U.S.C.A. § 1437f(d)(1) merely requires a termination clause to be included as a provision in the H.A.P. contract and that the clause only governs relations between the parties during the life of the contract. From this premise, Templeton Arms argues that once the lease and the contract expire, the regulation incorporated in the contract is no longer enforceable.[3] The statutory requirement of good cause, it contends, expires as well. Cited in support of this conclusion *11 are O'Brien v. Town of Westerly Housing Authority, 626 F. Supp. 1065, 1071 (D.R.I. 1986) and Whitehall Manor Properties, Inc. v. Lamothe, 13 Mass. App. 917, 430 N.E.2d 852, 853 (App.Ct. 1982), appeal denied, 385 Mass. 1103, 441 N.E.2d 1043 (1982).
This argument is creative but not persuasive. Case law and recent interpretations offered by H.U.D. itself make it clear that good cause is required for nonrenewal of a Section 8 lease, as well as for mid-lease terminations.
Under the prior version of § 1437f(d), a public housing agency was responsible for approving the termination of a tenancy. The former statute required that all H.A.P. contracts contain a provision that "the agency shall have the sole right to give notice to vacate, with the owner having the right to make representation to the agency for termination of tenancy." 42 U.S.C.A. § 1437f(d)(1)(B) (1976). Although the statute contained no explicit good cause requirement, the court in Swann v. Gastonia Housing Authority, 502 F. Supp. 362, 364 (W.D.N.C. 1980), aff'd in part, 675 F.2d 1342 (4th Cir.1982), determined that a Section 8 tenancy could not be terminated at the end of the lease term without a showing of good cause by the landlord. A review of the legislative history and the purposes of the Act convinced that court that good cause was required to justify a landlord's refusal to renew a Section 8 lease:
The purpose of the Act would be frustrated if a landlord were allowed to participate in and take advantage of the economic security provided to landlords under the Act, and yet the tenant were stripped of any reciprocal security by being vulnerable to eviction without good cause at the expiration of the lease term. Congress could not have intended such unfairness and insecurity in an area as critical for low-income families as is basic housing. [502 F. Supp. at 365].
Although § 1437f(d) was amended in 1981, the stated purpose of the Act was not altered, 42 U.S.C.A. § 1437f(a); the goal of providing a decent home, within an "atmosphere of stability, security and fairness," Swann, supra, 502 F. Supp. at 365, remained the same. The "termination of tenancy" language *12 has also been retained in the statute and the regulation. The Swann holding and rationale, then, are still compelling.
The amended version explicitly requires good cause for termination of a tenancy. The court in Mitchell v. U.S. Dept. of Housing & Urban Development, 569 F. Supp. 701 (N.D.Cal. 1983) addressed the issue of whether under the amended statute, good cause is required when a landlord chooses not to renew a Section 8 lease. There, a housing assistance tenant brought a motion for a preliminary injunction to restrain her landlord from evicting her and to restrain the local housing authority from refusing to make rental assistance payments. The landlord had notified her that he did not intend to renew her Section 8 lease. The H.U.D. regulation then in effect read:
The Contract and the Assisted Lease shall provide with respect to the unit that the Owner shall neither (i) terminate the tenancy during the term of the Contract and Assisted Lease, nor (ii) refuse to enter into a new Assisted Lease with the Family, unless the Owner decided not to enter into a new Contract with respect to the unit, except for; (1) Serious or repeated violation of the terms and conditions of the Lease;
(2) Violation of applicable Federal, State or local law; or
(3) Other good cause. [24 C.F.R. 882.215(b)].
The Mitchell court observed that under the regulation, and H.U.D.'s ensuing interpretation, an "individual unit loophole" was created. Id. at 707. The application of the good cause standard turned upon the landlord's intentions with respect to a particular unit. If he desired to lease the unit to another assisted tenant, good cause was required for nonrenewal of the existing tenant's lease. However, "a landlord [could] refuse to renew a lease without a showing of good cause as long as the exact same rental unit previously subject to the lease [was] not re-leased to another housing assistance tenant." Ibid.
As to the argument that the regulation was contrary to legislative intent, the court first examined the language of the statute:
[I]n amended section 1437f Congress used the phrase `terminate the tenancy.' If Congress had intended the good cause requirement to be applicable only to mid-lease evictions, it could have easily selected the phrase `terminate the *13 lease.' Congress did therefore appear to require good cause for non-renewal of an assisted lease. [Id. at 708-709 (emphasis supplied)].
The Mitchell court went on to note that the portion of the H.U.D. regulation which exempted certain nonrenewals from the good cause requirement appeared to have "transgressed the legislative intent behind the statute. There is no express language in Section 1437 supporting the `individual unit loophole'." Id. at 708. Once again, the legislative objective of providing decent housing, along with some certainty in that housing, was at stake. Under the regulation, "[l]andlords could comply with their housing assistance obligations while `playing musical chairs' with their apartments until they [found] the low income tenants they desire[d]. Mixed housing would be hindered. And more importantly, a large percentage of assisted tenants would be required to relocate every year." Ibid. The court accordingly granted the tenant's motion for interim injunctive relief, finding that there was a probability of success on the merits of her claim that good cause must be shown for nonrenewal of a Section 8 lease, despite the ending of a lease term. Id. at 710.
New Jersey trial courts have followed the lead of Swann and Mitchell. In R & D Realty v. Shields, 196 N.J. Super. 212 (Law Div. 1984), the court accepted the Mitchell analysis in holding that the "loophole" established under H.U.D.'s prior regulation, 24 C.F.R. 882.215(b), was invalid. The court further held that "a good cause requirement for nonrenewal of an Existing Housing Program Lease can be implied from the language contained in 42 U.S.C.A. § 1437f(d)(1)(B)(ii)." Id. at 219. The court in Ivy Hill, supra, 207 N.J. Super. at 598, , similarly cited Mitchell in determining that "`[f]or other good cause,' 42 U.S.C.A. § 1437f(d)(1)(B)(ii), is the standard to be applied in situations where the landlord refuses to renew a § 8 subsidy lease." Although both cases referred to H.U.D.'s interim regulation, it is significant that both trial judges relied upon the federal statute to support their conclusions in this regard.
*14 H.U.D. amended its regulation in 1984 to conform to the essential holding of Mitchell that the "loophole" was contrary to law and Congressional intent. 49 Fed.Reg. 12214 et seq. (March 29, 1984); 49 Fed.Reg. 14729 (April 13, 1984). 24 C.F.R. 882.215(c), in its current form, contains the conditions for "termination of tenancy," but no longer expressly differentiates between mid-lease termination and nonrenewal. To the extent that the new regulation casts doubt on the prior judicial interpretations, or any uncertainty exists as to the application of the good cause requirement, we believe that H.U.D.'s explanation of 24 C.F.R. 882.215(c) unequivocally indicates that good cause is required for nonrenewal. H.U.D.'s comments to the final regulation specifically state that "[t]he present statutory good cause requirements for termination of the tenancy apply both during the term of an assisted lease and at the end of the lease term." 49 Fed.Reg. at 12231.
Among the more recent section 8 cases is Rushie v. Berland, 130 Misc.2d 816, 502 N.Y.S.2d 359 (Sup.Ct. 1986), in which the court relied upon H.U.D.'s comments in analyzing, and resolving, whether good cause was required for nonrenewal. There, landlords instituted a summary proceeding to recover an apartment on the ground that the Section 8 lease and H.A.P. contract had expired. The court, reviewing the Swann and Mitchell decisions as well as H.U.D.'s commentary to the amended regulation stated:
Moreover, while the new HUD regulations are not strictly applicable to the instant action, that HUD ultimately joined in the position taken by the Mitchell Court, notably stating that "[t]he Department believes that other courts are likely to follow this analysis" (supra), is indicative of overwhelming legislative, administrative and judicial accord as to the policy position that a Section 8 housing assistance tenant has a right to continued occupancy in the absence of good cause for eviction, notwithstanding the termination of the lease. Since the landlords herein have failed to demonstrate "good cause" for their refusal to renew the subject Section 8 lease, the holdover petition must be dismissed. [Id. at 361 (quoting 49 Fed.Reg. at 12234)].
The decisional authority cited by Templeton Arms is inapposite. Whitehall Manor Properties, Inc. v. Lamothe, supra, 430 N.E.2d at 853, decided under the former statutory and *15 regulatory scheme, makes vague reference to "certain procedures" which a landlord need not follow to terminate a Section 8 lease when the lease is no longer in effect. In O'Brien v. Town of Westerly Housing Authority, supra, 626 F. Supp. 1065, plaintiff had brought a class action challenging the housing authority's policy of promoting mid-term terminations of Section 8 leases. The litigation culminated in a court order requiring defendant to henceforth provide notice to a tenant before terminating a housing assistance payment. On plaintiffs' subsequent motion for an award of attorneys fees and costs, the court had to decide whether plaintiffs could be considered prevailing parties, i.e., whether they succeeded on any significant issue in litigation which achieved benefit to plaintiff and the class.
The court, in dicta, noted plaintiffs' argument that "`[a] landlord knows he can withdraw from the program at the end of the term, even if the tenant has complied with all requirements. The tenant knows that the stability and security interest is protected at least during the one year term unless the tenant breaches.'" Id. at 1071. Templeton Arms seizes upon this generalized statement which merely addresses a landlord's ability to withdraw; it does not speak to the crucial and relevant issue of the prerequisites which must be satisfied before he can do so.
Even under prior versions of the law governing the Section 8 program, the courts, mindful of the very purposes of the program, recognized a landlord's obligation to renew a Section 8 lease, absent a showing of good cause. Whether judicially implied or statutorily imposed, this principle has withstood the numerous amendments to the federal statute and to the H.U.D. regulations. The recent H.U.D. comments reinforce our conclusion *16 that good cause is required for nonrenewal of a Section 8 lease.[4]

II. GOOD CAUSE FOR WITHDRAWAL
Templeton Arms next argues that even if good cause is required for nonrenewal, the requirement is not applicable where, as here, a landlord seeks to end his participation in the Section 8 program altogether. The present statute and regulation do not expressly state whether good cause is required in this situation. Templeton Arms contends that a reasonable construction is that landlords are exempt from the good cause requirement as long as they terminate their participation in "good faith." Templeton Arms focuses upon the conference committee statement attached to the 1981 amendment as expressing the controlling, legislative intent behind the statute:
The conference report contains the Senate provision amended to require that in the case of leases entered into after the beginning of fiscal year 1982 under the section 8 existing program, ... the owner shall not terminate the tenancy except for serious or repeated violation of the lease, applicable state, local or federal law, or for other good cause.
It is not the intention of the Conferees that these statutory provisions govern the relationship between a landlord and a tenant after a landlord has, in good faith, terminated his participation in the sec. 8 existing program. [H.Rep. 97-208, 97th Cong., 1st Sess. 695, reprinted in 1981 U.S. Code Cong. & Ad. News 396, 1010, 1053-1054 (emphasis supplied)].
Moreover, the Mitchell court construed this excerpt as indicating that "the landlord's termination of his or her participation *17 in the entire assisted housing program, as opposed to a single, isolated lease, ends the obligation to comply with the good cause for termination of tenancy requirements." Mitchell, supra, 569 F. Supp. at 708 (emphasis in original).
Templeton Arms additionally voices concern that a good cause requirement would make it extremely difficult for a landlord to withdraw from the Section 8 program. If good cause is required for withdrawal, it argues, landlords will effectively be bound to participate until either a subsidized tenant elects to move or justification can be found for his eviction. Such a requirement, it is argued, would deter private landlords from participating voluntarily in the program, and thereby so decrease the number of subsidized housing units available as to subvert the overriding public policies behind the Section 8 program. Accordingly, Templeton Arms contends that landlords must be allowed to terminate their voluntary participation for any reason or no reason, so long as they act in good faith. "Good faith," in the view of Templeton Arms, is to be defined as merely requiring fair and nondiscriminatory conclusion of participation in the subsidy program, akin to the standards articulated in Ivy Hill, supra, 207 N.J. Super. at 599.

A. APPLICABILITY
Unquestionably, a private landlord who willingly participates in the Section 8 program has a right to discontinue that participation. The program, which contemplates and relies upon voluntary involvement,[5] has a definite starting point for *18 individual participants and should have an equally definite end point. The conference committee statement expresses an intention that a landlord does not have to participate indefinitely. See also R & D Realty v. Shields, supra, 196 N.J. Super. at 220; Ivy Hill Park Apartments v. Martin, supra, 207 N.J. Super. at 599.
However, the right to withdraw must be exercised in accordance with program conditions for termination. A landlord's right to discontinue participation in the Section 8 program must be balanced against the tenant's right to be protected from arbitrary ouster. As to the question of "[w]here does a Section 8 lease end?", the court in Swann v. Gastonia Housing Authority, supra, 502 F. Supp. at 367 responded:
The answer is that a lease signed pursuant to the Section 8 existing housing program will end upon a demonstration by the landlord ... that he has a good reason for terminating at the end of a lease term or that the tenant has violated a lease condition. A Section 8 landlord must understand from the beginning that if he decides to accept the benefits of participating in a Section 8 program, then he must agree to be fair to the tenant. The landlord is protected by Section 8 from financial losses resulting from arbitrary action by the tenant. The tenant likewise can expect to be protected from the loss of a home resulting from arbitrary actions by the landlord. [Emphasis supplied].
The principle of fairness to the tenant, a recurring theme in many of the cited decisions pertaining to the Section 8 program, should not be disregarded just because a landlord seeks to withdraw from the program. Even in this context, requiring a showing of good cause is a manifestation of the fairness principle and a means of balancing the parties' respective rights. From the tenant's perspective, there is no practical *19 difference between a landlord's actions in refusing to renew the Section 8 lease or in desiring to withdraw from the program.
We embrace the argument advanced by Mrs. Feins that the good cause requirement, under the statutory and regulatory scheme, applies when a landlord seeks to terminate participation in the Section 8 program. Following the Mitchell decision, H.U.D. was called upon to assess that court's view that an owner who wishes to withdraw entirely from the program need not show good cause. H.U.D., less than one year later, published the following statement:
The reasoning of the court in Mitchell affords the Department only two choices:
(1) To allow an exemption from good cause if an owner is withdrawing all units from participation in the program; (2) To require that in all cases the owner must have good cause for termination of tenancy, without authorizing any exemption. After full consideration of the public comment on the interim rule, the Department has decided that the final rule will not provide or permit any exemption of the owner from the good cause requirement for termination of tenancy (with respect to contracts or leases entered after the rule is effective). [49 Fed.Reg. at 12234 (emphasis supplied)].
Templeton Arms is not exempt from the good cause requirement, as the H.U.D. comments unmistakably make clear.[6]

B. APPLICATION
Having determined that the good cause requirement is applicable when a landlord seeks to withdraw, the more difficult *20 question is determining its effect, application and scope. What does "good cause" mean and how is it applied and satisfied in this particular factual complex? The parties present differing concepts of the purview of the requirement. Indeed, their divergent views mirror the present state of decisional law on the subject.
Templeton Arms contends that if good cause is required, a landlord's desire to discontinue participation in the Section 8 program itself constitutes good cause, although the landlord must do so fairly, by treating all tenants equally. Ivy Hill, supra, 207 N.J. Super. at 599. Mrs. Feins, on the other hand, asserts that if a landlord is allowed to withdraw without justification, the good cause requirement is essentially rendered meaningless. Mrs. Feins refers to the list of examples of good cause provided in 24 C.F.R. 882.215(c)(2), noting that a landlord's desire to withdraw is not included. In addition, Mrs. Feins interprets the good cause requirement as a mechanism for determining whether a landlord is in fact withdrawing from the Section 8 program in good faith. In her view, "[a] good faith termination could only be inferred when a landlord establishes an independent business or economic reason for its withdrawal...."
Neither approach is wholly acceptable. Templeton Arms' approach echoes that of the court in Ivy Hill, supra: a landlord who wishes to withdraw from the program "has" good cause. 207 N.J. Super. at 599. Under Ivy Hill, the focus is upon the fairness of the landlord's chosen procedure in withdrawing; there is no inquiry into the landlord's reasons for withdrawal. By defining withdrawal from the program as constituting good cause, the landlord is in effect allowed an exemption from proving good cause, contrary to the regulatory scheme. 49 Fed.Reg. at 12234.
In our view, to say that a landlord has per se established good cause by expressing an intention to withdraw, is to ignore the policies embodied in the Section 8 program and the express *21 statements by H.U.D. regarding its implementation. A landlord may have good cause in this situation, but this conclusion can only derive from an appropriate inquiry into the reasons for withdrawal as well as the manner of withdrawal.
We need not precisely define good cause or its many elements. As H.U.D. has explained in its comments to the final regulations:
[A] comprehensive regulatory definition of good cause... is neither possible nor desirable. The good cause category should remain open to case by case determination by the courts. It is a prime virtue of this statutory category that it permits termination by an owner in types of cases which cannot be readily foreseen.... The good cause concept should be flexible and open to application in concrete cases, but there is a critical need to provide explicit regulatory assurance to prospective section 8 owners that legitimate owner concerns will be recognized as grounds for termination of tenancy. [49 Fed.Reg. at 12233].
H.U.D. has provided some illustrations of good cause in 24 C.F.R. 882.215(c)(2). Included in the list are "the Owner's desire to utilize the unit for personal or family use or for a purpose other than use as a residential rental unit; or a business or economic reason for termination of the tenancy (such as sale of the property, renovation of the unit, desire to rent the unit at a higher rental)."[7] In addition, the regulation provides, "This list of examples is intended as a non-exclusive statement of some situations included in `other good cause,' but shall in no way be construed as a limitation on the application of `other good cause' to situations not included in the list."
The good cause standard, then, is flexible, taking its shape from the particular facts to which it is applied. Good cause is distinct from good faith, although good faith is relevant in evaluating good cause. As H.U.D. has expressed:

*22 [I]n most cases a good cause exemption is not necessary. An owner who is withdrawing all units in good faith from participation in the program for a business or economic reason has "other good cause" for termination of tenancy. Indeed the owner could withdraw even a single unit from the program for a good cause business or economic reason. [49 Fed.Reg. at 12234].
This statement also reflects that a landlord who wishes to withdraw entirely from the Section 8 program does not face an insurmountable burden. Templeton Arms' argument that a good cause requirement will bind an individual landlord to endless participation or that this standard will discourage prospective landlords from voluntary participation is thus rejected. The court in Mitchell, supra, 569 F. Supp. at 708-709, encountered, and similarly rejected, this proposition: "The good cause requirement for non-renewal is not an onerous burden upon the landlord. Good cause can be business or economically based.... The good cause requirement ... is not onerous, but merely fair." (footnote and citation omitted). See also n. 3 of the Mitchell opinion, 569 F. Supp. at 709 ("[T]he good cause requirement for non-renewal ... is not so onerous as to discourage landlords from participating in the housing assistance program, in light of the benefits they receive from the program.").
Courts have regularly hesitated to define good cause. See, e.g., Swann, supra, 502 F. Supp. at 367. They have also espoused different views as to its application. Compare Ivy Hill, supra, 207 N.J. Super. at 599 with R & D Realty v. Shields, supra, 196 N.J. Super. at 219. Yet courts have been cognizant of the purposes of the Section 8 program, and in applying the good cause standard, have attempted to be procedurally and substantively fair, both to the landlord and the tenant. In holding that a landlord who seeks to withdraw entirely from the Section 8 program is subject to the good cause requirement, we emphasize that there is no single factor which is determinative. The factual inquiry includes ascertaining a landlord's primary intentions (i.e., Does he intend to withdraw from the program or is he circuitously attempting to eliminate an unacceptable tenant?); exploring the particular *23 reasons for terminating participation (i.e., Is there a business or economic reason, or other "legitimate owner concern"?); and, reviewing the manner of termination (i.e., Has the landlord observed due process and treated all tenants fairly and equally? Ivy Hill, supra, 207 N.J. Super. at 599.).
The governing good cause standard is not easily articulated. However, it is to be applied to the totality of the particular circumstances in order to effectuate the policies of the Section 8 program.

III. GOOD CAUSE IN THIS CASE
Finally, Templeton Arms argues that even if the good cause requirement is applicable, the trial judge erred in holding that good cause does not exist in this case. Observing that Mrs. Feins initially came into tenancy as a full-paying tenant, and that despite nonrenewal of the Section 8 lease, she has been offered a new, standard form lease, Templeton Arms claims that it is not withdrawing from the program as a means of evicting her. Further, Templeton Arms argues that since Mrs. Feins was the only tenant involved in the Section 8 program, it clearly terminated its participation in good faith by sending her more than 45 days notice of its planned action,[8] and by refusing requests of other tenants who sought subsidized leases.
Mrs. Feins contends that the trial judge properly found that Templeton Arms failed to establish good cause, as its reason *24 for termination of participation was an administrative one. Templeton Arms objects to this characterization, asserting that the decision to withdraw was the result of a reasoned, business judgment.
The fact that Mrs. Feins was the only tenant involved in the Section 8 arrangement does not excuse Templeton Arms from compliance with the good cause requirement. The good cause standard applies regardless of the number of tenants involved in the program. The importance of the policies underlying the program does not hinge upon the number of subsidized tenancies. Even one tenant is entitled to be protected from arbitrary or unfair actions. The legal issues remain the same. The application of the good cause standard simply and flexibly accommodates this particular factor.
We need not resolve the numerous factual issues presented as to the motive(s) of Templeton Arms, the validity of its reasons for discontinuing participation, or its observation of due process. A careful review of the record reveals that the trial court arrived at its conclusions based on uncertified, unsworn allegations contained in letter memoranda, and on the factual contentions of counsel advanced in support of their respective legal positions at oral argument. No testimony was taken, no documents were admitted into evidence and no stipulations were made regarding the factual issues.[9] These omissions may account for the judge's possible misconstruction of Templeton *25 Arms' argument regarding the nature of the burdens imposed by the Section 8 program.
A plenary hearing is necessary in order to adequately develop and determine all the factual issues inherent in the good cause requirement of 42 U.S.C.A. § 1437f(d)(1)(B)(ii) and 24 C.F.R. 882.215(c). After such a hearing, the trial court will also be in a better posture to evaluate whether Templeton Arms' proposed, unsubsidized lease is violative of N.J.S.A. 2A:18-61.1(i).
Accordingly, the order dismissing the complaint is reversed and the matter is remanded to the Special Civil Part for proceedings consistent with this opinion.
NOTES
[1] Rental assistance payments have been made, however, during the pendency of this appeal. Subsequent to the trial judge's decision, Templeton Arms and the New Jersey Department of Community Affairs entered into a renewal agreement under which the Department would make assistance payments for the period April 1, 1986 to March 31, 1987. Templeton Arms agreed to continue its participation in the Section 8 program for the additional year, subject to its express reservation of rights on appeal.

Mrs. Feins' motion to dismiss the present appeal, on the ground that the one-year renewal agreement rendered the appeal moot, was denied on October 9, 1986.
[2] In its appendix, Templeton Arms has included a third letter, dated February 12, 1986, from Mr. Mitnick to Mrs. Feins in which he advised her of the landlord's willingness to enter into a new, one-year standard lease effective April 1, 1986. He also advised Mrs. Feins that Templeton Arms would not agree to renew the Section 8 lease. A notation at the bottom of the letter reads: "NOTE: The Landlord will only sign a Lease in the same form as the Landlord generally uses with reference to apartments at this property, & will not agree to the form requested by the Division of Housing and Development of the New Jersey Department of Community Affairs." The letter was referenced in Mr. Mitnick's written request to the trial judge for a rehearing.
[3] Paragraph 9 of the H.A.P. contract entered into between the D.C.A. and the landlord ("Trinity Management Co." is indicated as the "Owner") reads:

TERMINATION OF TENANCY.
(A). The Owner shall not terminate the tenancy of the Family except for:
(1). Serious or repeated violation of the terms and conditions of the Lease;
(2). Violation of Federal, State or local law which imposes obligations on the Family in connection with the occupancy and use of the dwelling unit and surrounding premises; or
(3). Other good cause.
Paragraph 6 of the corresponding Section 8 lease reads:
With respect to the Contract unit, the Owner shall neither (i) terminate the tenancy during the term of the Contract and Lease, nor (ii) refuse to enter into a new Lease with the Family, unless the Owner decides not to enter into a new Housing Assistance Payments Contract with respect to the Contract Unit, except for:
(a) serious or repeated violation of the terms and conditions of the Lease;
(b) violation of applicable Federal, State or local law; or
(c) other good cause.
[4] Under New Jersey's Anti-Eviction Act, N.J.S.A. 2A:18-61.1 et seq., a landlord is similarly obligated to renew certain residential leases absent a showing of good cause. By virtue of N.J.S.A. 2A:18-61.3(a), "[n]o landlord may evict, or fail to renew any lease of any premises covered by section 2 of this act [N.J.S.A. 2A:18-61.1] except for good cause as defined in section 2." We note that the good cause requirement under the Anti-Eviction Act serves to promote legislative objectives similar to those underlying Section 8 of the United States Housing Act of 1937, 42 U.S.C.A. § 1437f. See Morristown Memorial Hosp. v. Wokem Mtge. & Realty, 192 N.J. Super. 182, 186 (App.Div. 1983) ("The fundamental aim of the act is ... to meet the rental housing shortage by affording residential tenants the right, absent good cause for eviction, to continue to live in their homes without fear of eviction or lease non-renewal and thereby to protect them from involuntary displacement.").
[5] A portion of the Senate Report on amended § 1437f states that the amendment:

is intended to minimize the disturbance of the private relationship under State law between the unit owner and the tenant. The provision of housing opportunities for assisted families depends on voluntary participation by private owners of existing housing. The proposal would assure owners that the procedural and substantive rights of the assisted tenant are the same as those applicable to non-subsidized tenants. The amendment is expected to encourage more owners to participate in the Section 8 existing housing program. [S.Rep. 97-139, 97th Cong., 1st Sess. 256, reprinted in 1981 U.S.Code Cong. & Ad.News 396, 552].
See also Mitchell v. U.S. Dept. of Housing & Urban Development, supra, 569 F. Supp. at 709, n. 3 in which the court reviewed this excerpt and noted, "However, this language cannot be considered to stand for the proposition that good cause is not required for non-renewals, as is the case in the private sector, in light of the explicit language in section 1437f requiring good cause for termination of tenancies, as opposed to termination of leases."
[6] Although a general statement of policy is not "finally determinative of the issues or rights to which it is addressed," Pacific Gas and Electric Company v. Federal Power Commission, 506 F.2d 33, 38 (D.C. Cir.1974), we defer to H.U.D.'s experience and expertise and believe its statutory construction is reasonable. See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 2782-2783, 81 L.Ed.2d 694 (1984) (footnote and citations omitted) ("We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations `has been consistently followed by this Court whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations.'").
[7] Other examples of "other good cause" for termination of tenancy primarily relate to tenant misconduct: "a Family history of disturbance of neighbors or destruction of property, or of living or housekeeping habits resulting in damage to the unit or property; criminal activity by Family members involving crimes of physical violence to persons or property." 24 C.F.R. 882.215(c)(2).
[8] Templeton Arms relies on the February 12, 1986 letter to Mrs. Feins, referred to in n. 2, supra, as providing timely and sufficient notice of reasonable changes in the renewal lease. The letter does not appear to have been specifically discussed at oral argument and was similarly not mentioned in the trial judge's written decision. At oral argument, however, Mr. Mitnick stated that the standard form lease between the parties expired March 31, 1986 and "[M]ore than 45 days prior to the termination of that lease, in accordance with the landlord's lease provisions, the landlord offered a renewal lease agreement at the 4 percent increase...." We decline comment as to the timeliness or sufficiency of notice. Rather, we emphasize that this factual issue exemplifies the need for a plenary hearing, see text infra at 25.
[9] In his written request to the trial judge for a rehearing, Mr. Mitnick challenged the judge's findings of fact and conclusions of law based on a record devoid of factual evidence. Mr. Mitnick explained that on the "hearing date," he was "still under the impression at that time that the only issue that the defendant was relying on was whether or not a landlord had the right to withdraw from the § 8 Program and if so, whether the landlord's withdrawal from the program entirely constituted good cause." Indeed, at one point during oral argument, with respect to the issue of another tenant's request for Section 8 assistance, Mr. Mitnick indicated that he had proofs and "would testify."